829 P.2d 1229

**LOU GRUBB CHEVROLET,**
**Petitioner Employer,**

**Argonaut Insurance Company,**
**Petitioner Carrier,**

v.

**The INDUSTRIAL COMMISSION**
**OF ARIZONA, Respondent,**

**Francesca Garten, Respondent**
**Employee.**

**No. 1 CA–IC 90–126.**

Court of Appeals of Arizona,
Division 1, Department A.

Dec. 31, 1991.

Review Denied June 2, 1992.

Long, Lester & Lundmark, P.A. by Steven C. Lester, Phoenix, for petitioner employer and petitioner carrier.

Anita R. Valainis, Chief Counsel, The Industrial Com'n of Arizona, Phoenix, for respondent.

Twitty, Sievwright & Mills by N. Douglas Grimwood, Phoenix, for respondent employee.

## OPINION

CONTRERAS, Judge.

This is a special action review of an Arizona Industrial Commission award for a compensable claim. The following issues are presented:

1. whether the Arizona Supreme Court erred in failing to interpret article XVIII, section 8 of the Arizona Constitution as exclusively defining the types of risks that are to be covered by the state's workers' compensation laws;

2. whether an interpretation of article XVIII, section 8 that permits compensability for actual and positional risks results in an unconstitutional taking of property without due process of law, and

3. whether sanctions for a frivolous appeal should be imposed in this case.

We reject the constitutional challenges to the compensability of actual and positional risks and accordingly affirm the award. In the exercise of our discretion, we decline to impose sanctions.

## FACTUAL AND PROCEDURAL HISTORY

Respondent employee (claimant) was a receptionist and telephone operator for petitioner employer (Lou Grubb). She filed a workers' compensation claim for an injury that occurred while she was seated at a switchboard. In her claim, she described the circumstances surrounding her injury as follows: "I was leaning forward, answering phones. I then leaned back into my spring-back[ed] chair, turning my head at the same time. I immediately felt a sharp, pinching sensation in the area of my left shoulder blade, which became stiff." The physician's initial report which accompanied the claim stated that "[p]atient developed sudden back pain moving at work as noted [in claimant's history]...."

Respondent carrier (Argonaut) denied compensability. Claimant retained counsel, who filed a protest on her behalf. A hearing was subsequently scheduled. Pending this hearing, Argonaut's counsel filed answers to interrogatories in which he explained that compensability had been denied because "[t]he mere turning of [claimant's] head to the left does not meet the criteria of an accident, and even if there was an accident which would produce an 'injury', the injury did not arise out of the [claimant's] employment."

At the scheduled hearing, claimant confirmed the history of her injury that she had reported in her written claim. A coworker corroborated her account by recalling that she had exclaimed in pain while she was sitting at the switchboard on the morning that she was injured. Claimant further testified that she was turning her head to see if there were any customers who were waiting for service when the injury occurred. She denied that she had ever suffered a similar injury or that she had ever had neck or shoulder problems prior to working for Lou Grubb. She described the consequences of her injury, which included several days of disability and of physical therapy. Argonaut objected to the latter testimony, arguing that the topic was beyond the scope of the compens-ability hearing and that it required expert medical evidence.

Claimant went on to provide new information about her working conditions. She worked from 7:00 a.m. to 4:00 p.m. She usually took breaks throughout the day at two-hour intervals, but she had been unable to take her breaks for a period of time before her injury occurred because she was training a new co-employee. At her work station, claimant sat on a spring-backed office chair that had been provided by her employer. The chair had a broken adjustment mechanism, which resulted in loose back support. Consequently, claimant often leaned forward and rested her elbows on the counter in front of her. This position caused muscular tension, and she had complained to her husband about it. She had also complained to her supervisor about the condition of her chair. On the morning that she was injured, claimant had worked three and three-quarters hours without a break. However, she denied that she had felt tense or fatigued immediately before her injury occurred. In addition, she acknowledged that a smooth, even motion had precipitated her pain.

At the close of the hearing, the Administrative Law Judge asked whether the treating physician's testimony would add anything to his initial report. In response, Argonaut stipulated that the doctor "reported the pain and the pain seems to be related to the motion that we have talked about." It also stipulated that "there would be requisite medical causation between the incident and the condition for which he saw her." The Administrative Law Judge then asked counsel to submit posthearing memoranda on the issue of legal causation, and the hearing was closed without objection.

Argonaut reluctantly conceded in its posthearing memorandum that claimant's injury had occurred "by accident" under Arizona law because pain was not an expected consequence of the movement that claimant had made. *See Murphy v. Industrial Comm'n,* 160 Ariz. 482, 774 P.2d 221 (1989). Argonaut argued, however, that because the pain-producing movement was

an ordinary one, claimant's injury was not an injury "arising out of [her] employment" under Arizona law. Claimant also filed a posthearing memorandum, and the Administrative Law Judge subsequently issued the award. He concluded that the claim was compensable because claimant had turned her head for a business purpose rather than for a personal one:

> The "arising out of employment" element of a workers' compensation claim is established if the injury resulted from some risk of the employment or incidental to the discharge of the duties thereof. *Royall v. Industrial Commission,* [106 Ariz. 346, 476 P.2d 156 (1970)]. In contrast, an injury resulting from a risk that is personal to the claimant does not arise out of employment unless the employment contributes to the risk or aggravates the injury. *1 A. Larson,* [*The Law of Workmen's Compensation*] § 12.00 (1989). In the present matter, as quoted above, the applicant's uncontroverted testimony indicates that she leaned back and turned her head to look out the show room window for the purpose of seeing if anyone had questions for her. On subsequent cross-examination, applicant conceded that she felt fine prior to the incident, and not fatigued, and that nothing particularly out of the ordinary occurred in her movements prior to the onset of the pain in the left shoulder blade area. Nevertheless, applicant's uncontroverted testimony describes "looking out the show room window" as an act incidental to the discharge of the duties of her position as a receptionist/telephone operator: If anyone presented himself or herself to the receptionist/operator in person rather than through a telephone call, the receptionist/operator would be the one to assist them. There is no indication that applicant's activity in "looking out the window" was for her personal

comfort, either in daydreaming, enjoying the view, or idly passing the time.

The Administrative Law Judge affirmed the award on administrative review. Argonaut then brought this special action-Industrial Commission. Before Argonaut's counsel filed his opening brief in this court, claimant's counsel informed him by letter that claimant would seek sanctions for a frivolous appeal because several indistinguishable decisions had recently been issued that supported the compensability of the instant claim.

## DISCUSSION

Argonaut asserts that the Arizona Supreme Court has misinterpreted article XVIII, section 8 of the Arizona Constitution. It further asserts that even if the court's interpretation is correct, it results in an unconstitutional taking of property without due process of law because it permits compensability for actual and positional risks. Claimant responds that Argonaut's appeal is frivolous because both the constitutionality of the court's interpretation of article XVIII, section 8 and the compensability of claims like her own are well-settled.

We first address claimant's contention that her claim is clearly compensable. Claimant maintains that Argonaut stipulated that her injury occurred because she was required to sit in a chair without adequate back support for nearly four straight hours. If Argonaut had made such a stipulation, we would agree that compensability was unquestionable. These facts would have established an increased risk of back strain, and Argonaut concedes the compensability of increased risks. *See, e.g., Industrial Indem. Co. v. Industrial Comm'n,* 162 Ariz. 503, 784 P.2d 709 (App. 1990).[1] However, Argonaut did not stipulate to these facts. It merely stipulated that the treating physician's medical report

---

1. Argonaut cites *Industrial Indemnity* as authority for the proposition that an increased risk is a prerequisite for compensability. However, the case actually addresses the sufficiency of an increased risk rather than its necessity. *See id.* at 507, 784 P.2d at 713 (not reaching sufficiency of actual risk because repetition of ordinary

activity increased risk of injury); *accord 1* Arthur Larson, *The Law of Workmen's Compensation* § 6.30 at 3–5 (1990). *But cf. Circle K Store # 1131 v. Industrial Comm'n,* 165 Ariz. 91, 94 n. 2, 796 P.2d 893, 896 (1990) (criticizing *Industrial Indemnity* for requiring increased risk).

was sufficient to establish medical causation based upon the history that claimant had given him. That history described claimant as leaning back in her chair, turning her head, and immediately feeling a sharp pain. Claimant provided additional history at the hearing, but if she intended to establish that her injury occurred because of these new facts, she was required to produce medical evidence to that effect. *See, e.g., id.* at 507, 784 P.2d at 713 (medical evidence necessary to establish that cumulative effect of work caused increased strain). Claimant failed to do so. Furthermore, the Administrative Law Judge did not rely upon the additional facts in making the award. He instead concluded that an isolated act of leaning backwards in a chair and turning one's head involved a risk of injury arising out of the employment if it was done in the course of actual work performance.[2]

We now turn to Argonaut's constitutional arguments. Arizona's Constitution and its Workers' Compensation Act both require that an industrial injury arise out of a worker's employment to be compensable. See Ariz. Const. art. XVIII, § 8; A.R.S. § 23–1021.[3] This requirement has been interpreted to mean that there must be a connection between the employment and the risk that results in the injury. *See, e.g., Royall v. Industrial Comm'n,* 106 Ariz. 346, 476 P.2d 156 (1970). The constitution also provides that a "necessary risk or danger of ... [the employment], or a necessary risk or danger inherent in the nature thereof" must wholly or partially cause or contribute to the injury. Ariz. Const. art. XVIII, § 8. This gives rise to the following question: if the constitutional and statutory "arising out of employment" provisions establish the need for a connection between the risk of injury and the employment, what is the effect of the addi-

2. The course of actual work performance must be distinguished from the course of employment: the latter includes the former, but it also includes much more. *See generally,* 1A Larson, *supra* §§ 21.00 to 28.30 (1990). The fact that an actual risk may be found to be sufficient for the compensability of an injury that occurs in the course of actual work performance does not mean that the actual risk will be found to be sufficient for the compensability of a similar injury that occurs during personal comfort activity. This is true even though the personal comfort activity remains in the course of employment. *Compare, e.g., Nowlin v. Industrial Comm'n,* 167 Ariz. 291, 806 P.2d 880 (App.1990) (back strain while sitting in chair to begin work arose out of employment) *with Sacks v. Industrial Comm'n,* 13 Ariz.App. 83, 474 P.2d 442 (1970) (herniated disc while rising from toilet did not arise out of employment).

3. Article XVIII, section 8 of the Arizona Constitution provides in pertinent part as follows:

The Legislature shall enact a Workmen's Compensation Law applicable to workmen engaged in manual or mechanical labor in all public employment whether of the State, or any political subdivision or municipality thereof as may be defined by law and in such private employments as the Legislature may prescribe by which compensation shall be required to be paid to any such workman, in case of his injury and to his dependents, as defined by law, in case of his death, by his employer, if in the course of such employment personal injury to or death of any such

workman from any accident arising out of and in the course of, such employment, is caused in whole, or in part, or is contributed to, by a necessary risk or danger of such employment, or a necessary risk or danger inherent in the nature thereof, or by failure of such employer, or any of his or its agents or employee or employees to exercise due care, or to comply with any law affecting such employment....

Arizona Revised Statutes section 23–1021 provides as follows:

A. Every employee coming within the provisions of this chapter who is injured, and the dependents of every such employee who is killed by accident arising out of and in the course of his employment, wherever the injury occurred, unless the injury was purposely self-inflicted, shall be entitled to receive and shall be paid such compensation for loss sustained on account of the injury or death, such medical, nurse and hospital services and medicines, and such amount of funeral expenses in event of death, as are provided by this chapter.

B. Every employee covered by insurance in the state compensation fund who is injured by accident arising out of and in the course of employment, and the dependents of every such employee who is killed, provided the injury was not purposely self-inflicted, shall be paid such compensation from the state compensation fund for loss sustained on account of the injury, shall receive such medical, nurse and hospital services and medicines, and such amount of funeral expenses in event of death, as provided in this chapter.

tional constitutional requirement that a risk resulting in an injury be necessary to or inherent in the employment?

■ Argonaut contends that this constitutional requirement in effect exclusively defines the risks that arise out of employment under A.R.S. section 23–1021, i.e., the statute must provide coverage for necessary and inherent risks, but it cannot provide coverage for any other types of risks.[4] Argonaut acknowledges that our supreme court has rejected this interpretation. *Goodyear Aircraft Corp. v. Industrial Comm'n*, 62 Ariz. 398, 158 P.2d 511 (1945); *Atkinson, Kier Bros., Spicer Co. v. Industrial Comm'n*, 35 Ariz. 48, 274 P. 634 (1929). It has filed this special action-Industrial Commission to challenge that rejection.

■ This court must follow supreme court authority. *See, e.g., McKay v. Industrial Comm'n*, 103 Ariz. 191, 438 P.2d 757 (1968); *Espinosa v. Industrial Comm'n*, 170 Ariz. 354, 824 P.2d 750 (App.1991). We recently followed *Goodyear Aircraft Corp. v. Industrial Commission*, 62 Ariz. 398, 158 P.2d 511 (1945), in rejecting the contention that article XVIII, section 8 restricts the statutory "arising out of" requirement to peculiar or increased risks. *See Samaritan Health Servs. v. Industrial Comm'n*, 170 Ariz. 287, 823 P.2d 1295 (App.1991). We will nevertheless address the arguments that Argonaut raises because they are novel and because our analysis may be of value.

Article XVIII, section 8 provides that the legislature shall enact a workers' compensation law. In *Goodyear*, our supreme court recognized that the power to enact such a law was inherent in the state's police power. *See Goodyear*, 62 Ariz. at 408, 158 P.2d at 515; *accord Atkinson*, 35 Ariz. at 52–53, 274 P. at 635. It therefore determined that instead of granting the legislature the power to enact a workers' compensation law, article XVIII, section 8 simply directed the legislature to exercise its police power by doing so. *See Goodyear*, 62 Ariz. at 408, 158 P.2d at 515; *accord Atkinson*, 35 Ariz. at 52–53, 274 P. at 635. From this premise, the court concluded that although the constitution required the legislature to provide the workers' compensation coverage that it specified, it did not restrict the legislature's power to provide additional coverage. *See Goodyear*, 62 Ariz. at 409, 158 P.2d at 516 ("The [workers' compensation] act widens the fields of [covered] accidents."); *accord Atkinson*, 35 Ariz. at 53–54, 274 P. at 635–36 (although constitution mandates coverage for only manual and mechanical labor, act permissibly extends coverage to non-manual and non-mechanical labor).

Argonaut asserts that this is an unwarranted inference and that the supreme court itself condemned it as such in interpreting article XVIII, section 7, the constitutional companion to article XVIII, section 8. Article XVIII, section 7 provides that the legislature shall enact an employers' liability law making employers liable for accidental employee injuries or deaths caused by the conditions of certain hazardous occupations.[5] Argonaut notes that the power to enact such a law is also inherent

---

**4.** Courts have identified four categories of risks that may be found to arise out of employment: peculiar risks, increased risks, actual risks, and positional risks. *See generally Nowlin v. Industrial Comm'n*, 167 Ariz. 291, 806 P.2d 880 (App. 1990) (discussing the four categories). Argonaut assumes without argument that only peculiar and increased risks are necessary and inherent risks. We need not address this assumption because we reject Argonaut's argument that article XVIII, section 8 precludes a more expansive interpretation of A.R.S. section 23–1021.

**5.** Article XVIII, section 7 of the Arizona Constitution provides as follows:

To protect the safety of employees in all hazardous occupations, in mining, smelting, manufacturing, railroad or street railway transportation, or any other industry the Legislature shall enact an Employer's Liability Law, by the terms of which any employer, whether individual, association, or corporation shall be liable for the death or injury, caused by any accident due to a condition or conditions of such occupation, of any employee in the service of such employer in such hazardous occupation, in all cases in which such death or injury of such employee shall not have been caused by the negligence of the employee killed or injured.

in the state's police power. *Atkinson,* 35 Ariz. at 52–53, 274 P. at 635. It contends that in *Consolidated Arizona Smelting Co. v. Egich,* 22 Ariz. 543, 199 P. 132 (1920), the supreme court nevertheless interpreted the language of article XVIII, section 7 as limiting the legislature's power to define the scope of employers' liability law.

In *Consolidated,* the defendant employer argued that the employee's injury was not compensable under the employers' liability law because it did not satisfy the statutory requirement of being caused by a risk or hazard that was inherent in the occupation. *Id.* at 546, 199 P. at 133. The court noted that article XVIII, section 7 did not include such a requirement. *Id.* at 549–51, 199 P. at 134. It stated that the legislature had no power to add to or detract from the employee's right of action as defined by the constitution. *Id.* at 551, 199 P. at 135. It found, however, that the legislature intended the statutory reference to risks or hazards inherent in the occupation to be a description of the dangerous nature of the occupations in question rather than an additional requirement for compensability. *Id.* at 550–51, 199 P. at 134–35.

Argonaut relies upon the court's discussion of article XVIII, section 7 in arguing that the legislature had no power to expand the risks covered by the workers' compensation law beyond those specified in article XVIII, section 8:

Section 7, article 18, of the Constitution is the fountainhead and source of the Employers' Liability Law. It creates and defines a new liability of the employer to the employee. It names and points out the circumstances and conditions under which the liability may arise. It defines the rights that may accrue to an injured or killed employee, and directs the Legislature to enact a law providing a method of procedure for the enforcement of those rights. *The mandate to the Legislature contained in said section adds nothing to the rights therein created. If the Constitution had stopped with the bare declaration of the right, the duty of the Legislature to enact laws for its enforcement would* have been just as imperative. The provision was not self-executing, and, whether commanded to supplement it with proper legislation or not, the obligation to do so was obvious, if the intention as expressed in the Constitution was to be carried out. *So the direction to the Legislature was not to create a new or different right of action, or to add to or take from the one declared by the Constitution, but to formulate laws whereby the rights secured may be realized....*

....

The definition of the right is that the injury or death must have been "caused by an accident due to a condition or conditions of the occupation." *The Legislature had no power to add to or take from this definition....*

....

A limitation on the legislative power may be by direct prohibition or by implication, and when it is by implication its restraints on the Legislature are no less binding than when expressly prohibited. *The command to the Legislature* to enact a law making the employer liable to the employee when the latter is injured or killed "by an accident due to a condition or conditions of the occupation," and not due to the employee's negligence, *impliedly prohibits the Legislature from changing the circumstances giving rise to the right of action, for, if the Legislature may change it in one respect, it could, while pretending to uphold it, so incumber the right as to abolish it altogether, or, on the other hand, could disregard it and extend a right and remedy to the employee under any and all circumstances.* But, as indicated above, we do not think the Legislature, in its general observation as to the lethal character of the occupations named intended to qualify or change the elements the Constitution says shall constitute the right.

We are of the opinion that the rights of the employer and employee under this law, when submitted to a court for adjudication, must be determined and settled

in accordance with the constitutional definition, that is, the injury or death must have been "caused by an accident due to a condition or conditions of the occupation," and "shall not have been caused by the negligence of the employee killed or injured."

*Consolidated*, 22 Ariz. at 549–52, 199 P. at 134–35 (emphasis added).

██ This analysis is doubly dicta. In the first place, as the court notes, coverage under the statute probably did not vary from coverage under article XVIII, section 7. In the second place, if the statute did vary coverage, it did so by providing less coverage than the constitution specified rather than more. Finally, we find this analysis unpersuasive because it elevates a maxim of construction, *expressio unius est exclusio alterius* (expression of one thing is the exclusion of another), to an invariable standard of interpretation. We believe that the better view, as expressed by the supreme court in *Atkinson*, 35 Ariz. 48, 274 P. 634, is that the application of the maxim should be applied with great caution.

In *Atkinson*, an employer argued that a statute which provided workers' compensation coverage for nonmanual and nonmechanical workers was unconstitutional because article XVIII, section 8's mandate to provide workers' compensation coverage for manual and mechanical workers was impliedly exclusive. *Id.* at 50, 274 P. at 634. The court rejected the application of *expressio unius est exclusio alterius*, stating that the legislature had the inherent power to enact workers' compensation coverage and that inherent power " 'not expressly denied to the legislature, ought not to be held denied by implication, unless its exercise would interfere with, frustrate, or to some extent defeat the exercise of power expressly granted.' " *Id.* at 53, 274 P. at 635 (quoting *Imperial Irrigation Co. v. Jayne*, 104 Tex. 395, 138 S.W. 575 (1911)). The court found that the extension of coverage to nonmanual and nonmechanical workers did not interfere with the coverage of manual and mechanical workers. *Id.* 35 Ariz. at 53–54, 274 P. at 635–36. It also

observed that after the statute in question was enacted, the legislature proposed an amendment to article XVIII, section 8 which the voters subsequently approved. *Id.* at 58–59, 274 P. at 637. The amendment provided in part that none of the industries to which the statute applied or the percentages or amounts of compensation that the statute established would be eliminated without a vote of the people. *Id.* at 51, 58, 274 P. at 635, 637. This led the court to conclude that neither the legislature nor the voters intended article XVIII, section 8 to restrict the statute's expanded scope. *Id.* at 59, 274 P. at 637.

The same analysis applies in the instant case. Article XVIII, section 8 mandates coverage of necessary and inherent risks. Arizona Revised Statutes section 23–1021, on the other hand, does not specify the risks that it covers. We conclude that the statute may be interpreted to permit coverage of additional risks because the legislature had the inherent power to enact this coverage and its implementation would not diminish the constitutionally mandated coverage of necessary and inherent risks.

Coverage of additional risks would, however, expose employers to increased no-fault liability. Argonaut argues that article XVIII, section 8 was intended to prevent this additional exposure. It bases its argument upon a comparison of Arizona's workers' compensation law and its employers' liability law. Both laws impose liability upon employers regardless of fault. *See Silver King Mining Co. v. Kendall*, 23 Ariz. 39, 201 P. 102 (1921); *Lapare v. Industrial Comm'n*, 154 Ariz. 318, 742 P.2d 819 (App.1987). However, employee negligence is a defense under employers' liability law, but not under workers' compensation law. *See* Ariz. Const. art. XVIII, § 7; A.R.S. § 23–801; *Colvert v. Industrial Comm'n*, 21 Ariz.App. 409, 520 P.2d 322 (1974). Argonaut notes that article XVIII, section 7 does not refer to injuries caused by necessary or inherent risks where employers' liability law is concerned, but that article XVIII, section 8 does refer to injuries caused by such risks where workers' compensation law is concerned. It maintains that because the no-fault liability of

employers under workers' compensation law is not limited by the availability of the employee negligence defense, article XVIII, section 8 was intended to limit liability under workers' compensation law to injuries caused by necessary and inherent risks.

Argonaut does not end its argument with this textual analysis. It also asserts that its interpretation is constitutionally required. It contends that because section 23–1021 derogates from the common law in imposing liability without fault and places a "very erroneous [sic]" burden upon employers, it is subject to strict scrutiny for a compelling state interest. It maintains that by failing to interpret article XVIII, section 8 as limiting the risks that arise out of employment under section 23–1021, the appellate courts have permitted an expansion of no-fault liability that results in a taking of property without due process of law.

We strongly disagree. Argonaut's fundamental assumptions are anachronistic. While liability without fault may have been unusual at common law, it is commonplace in the age of strict products liability. *See generally* William Prosser and W. Page Keeton, *The Law of Torts* § 98 (1984). Furthermore, it was the inadequacies of common law remedies that gave rise to social legislation like workers' compensation law. *See generally* 1 Larson, *supra* §§ 1.00–5.30 (1990). While such remedial legislation was once subjected to strict constitutional scrutiny, the age of economic substantive due process ended in 1937. *See West Coast Hotel v. Parrish*, 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703 (1937); *see also* Laurence Tribe, *American Constitutional Law* §§ 8–1 to –7 (1978); David Smith, *Economic Substantive Due Process in Arizona: A Survey*, 20 Ariz.St.L.J. 327 (1988). We accordingly reject Argonaut's analysis and the companion argument that the supreme court's interpretation of article XVIII, section 8 results in an unconstitutional taking of property without due process.

The remaining question is whether this is a frivolous appeal. Claimant accurately characterizes Argonaut's briefs as a jeremiad. We also note that the type of invective employed by Argonaut in its briefs is both ill conceived and calculated to fail. However, we will not grant sanctions in this instance.

Claimant also condemns Argonaut's challenge to long-standing authority. We do not agree that the case upon which claimant relies disposed of Argonaut's arguments. It confirmed the constitutionality of workers' compensation coverage for nonhazardous employments, not for actual or positional risks. *See Alabam's Freight Co. v. Hunt*, 29 Ariz. 419, 242 P. 658 (1926). Furthermore, although we conclude that Argonaut's position is fundamentally incorrect, we do not find that the questions that it raised or the novel arguments that it presented were frivolous. We therefore deny claimant's request for sanctions.

The award is affirmed.

EHRLICH, P.J., and VOSS, J., concur.