823 P.2d 685

**Linda KNAPP, Petitioner,**

v.

**The Honorable Frederick J. MARTONE, a Judge of the Superior Court of the State of Arizona, in and for Maricopa County, Respondent.**

**and**

**John Henry KNAPP, Real Party in Interest.**

**No. CV–91–0356–SA.**

Supreme Court of Arizona, En Banc.

Jan. 7, 1992.

Carmen L. Fischer, Phoenix, for petitioner.

Meyer, Hendricks, Victor, Osborn & Maledon, P.A. by Andrew D. Hurwitz and Sigmund G. Popko, Larry A. Hammond, Jon M. Sands, and Henze, Ronan & Clark by

Tom Henze, Phoenix, for real party in interest.

## OPINION

MOELLER, Justice.

## STATEMENT OF THE CASE

Petitioner Linda Knapp asks that we accept jurisdiction of this special action and vacate the trial court's order compelling her to submit to a court-ordered deposition requested by her former husband, John Henry Knapp (defendant).[1] Ariz. Const. art. 6, § 5(1) grants us jurisdiction over common law writs, which are now presented as special actions pursuant to Rules 4(a) and 7(a), Ariz.R.P.Spec. Act., 17B A.R.S.

## QUESTION PRESENTED

Is Linda Knapp a "victim" within the meaning of the Arizona Victims' Bill of Rights, Ariz. Const. art. 2, § 2.1?

## FACTS AND PROCEDURAL BACKGROUND

In 1973, defendant was charged with two counts of first degree murder of his daughters, aged two and three. Defendant's first trial ended in a mistrial. At his second trial, defendant was convicted of murdering his children and sentenced to death. The convictions and sentences were affirmed on appeal to this court. *State v. Knapp*, 114 Ariz. 531, 562 P.2d 704 (1977), *cert. denied*, 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978). In post-conviction proceedings in 1987, the trial court granted defendant a new trial based on newly discovered scientific evidence. In December 1987, the trial court dismissed the case without prejudice.

In October 1990, the state re-charged defendant with first degree murder. Because of defendant's earlier claims that his confession was given to protect his wife, the state, in the 1990 information, added an alternative allegation charging defendant as an accessory. In oral arguments in the trial court, the state acknowledged that, under the accessory theory, the co-conspirator would be Mrs. Knapp. However, the state has never charged her with a crime nor has it named her in an information or indictment. Although the state disclaimed any intent to call Mrs. Knapp as a witness, defendant sought to depose her. He claims she is a potential defense witness, and he is entitled to depose her although he has access to all the transcripts of her earlier interviews and testimony. Mrs. Knapp objected to the proposed deposition, arguing that, as a victim under the Victims' Bill of Rights, Ariz. Const. art. 2, § 2.1, she has the right to refuse to submit to a deposition. The trial court overruled her objection and ordered her to submit to a deposition based on its finding that she was not a victim "within the definition of the Victim Bill of Rights," and that "it could not have been the intent of the draftspersons (of the Victims' Rights Amendment) to exclude a person, such as Ms. Knapp, who was, is, or could be a suspect in the case."

Mrs. Knapp challenged the trial court's ruling in an unsuccessful special action in the court of appeals. She then filed this special action in this court. We stayed the deposition pending oral argument. Following oral argument, by majority vote, we vacated the trial court's order, stating that an opinion would follow in due course. This is that opinion.

## DISCUSSION

▪ Petitioner argues that, as the mother of the two children alleged to have been murdered, she is a "victim" under the Victims' Bill of Rights and may therefore properly refuse defendant's request to depose her. Although the Victims' Bill of Rights did not become effective until November 1990, after this case was filed, it nevertheless applies. *State v. Warner*, 168

---

1. In published opinions, we avoid using the victim's real name when the victim's identity is not material to a discussion of the case and when disclosure might further traumatize the victim. In this case we use petitioner's real former married name because the facts of the case make her identity obvious, and because it has already been widely disseminated by the news media for many years.

Ariz. 261, 812 P.2d 1079 (App.1990) (Victims' Bill of Rights giving victim right to refuse an interview is procedural and therefore applies to cases pending on date amendment became effective). The Victims' Bill of Rights defines "victim" as:

a person against whom the criminal offense has been committed or, *if the person is killed* or incapacitated, *the person's* spouse, *parent,* child or other lawful representative, *except if the person is in custody for an offense or is the accused.*

Ariz. Const. art. 2, § 2.1(C) (emphasis added). As mother of the children involved, Mrs. Knapp is a "victim" under the constitutional definition.[2] The only victims excluded from the protection of the Victims' Bill of Rights are those "in custody for an offense" or those who are "the accused." Mrs. Knapp is not "in custody for an offense" nor is she "the accused" in any commonly accepted usage of the term. While the Victims' Bill of Rights itself does not define "accused," the Victims' Rights Implementation Act, A.R.S. § 13–4401(1), which became effective December 31, 1991, defines an "accused" as "a person who has been arrested for committing a criminal offense and who is held for an initial appearance or other proceeding before trial." Mrs. Knapp is therefore not an accused under the constitutional provision, nor will she be one under the prospective statutory provision.

Although the dissent would affirm the trial court's order compelling Mrs. Knapp to submit to a deposition on the theory that she is "the accused" or "an accused," the trial court did not consider her to be an "accused." Instead, the trial court held that Mrs. Knapp was not a "victim" at all on the theory that the drafters of the constitutional amendment did not intend to include as a victim a person "who was, is, or could be a suspect" in a case. Although petitioner at one time may have been a suspect in this case and has received a grant of immunity in exchange for her

testimony, she has never been charged with or held for any offense.

▮ This is the first published opinion of this court involving application of the recently-enacted Victims' Bill of Rights. It is important to emphasize that Arizona courts must follow and apply the plain language of this new amendment to our constitution. If trial courts are permitted to make ad hoc exceptions to the constitutional rule based upon the perceived exigencies of each case, the harm the Victims' Bill of Rights was designed to ameliorate will, instead, be increased. Permitting such ad hoc exceptions will encourage defendants or others to assert that the person designated as the victim should, instead, be considered a suspect. These assertions will lead to hearings, such as the one held in this case, to determine whether the rights expressly granted to victims by the Victims' Bill of Rights should be overridden. Such proceedings can only increase the harassment of victims that the Victims' Bill of Rights was designed to decrease.

### DISPOSITION

Petitioner is a victim as defined in the Victims' Bill of Rights. As such, she has a constitutional right to refuse defendant's request for a deposition. The trial court's order overriding that refusal was error and it is hereby reversed.

GORDON, C.J., and CAMERON and CORCORAN, JJ., concur.

FELDMAN, Vice Chief Justice, dissenting.

The court holds that the mother of the two children is a "victim" entitled to invoke the protection of the victims' bill of rights and thus refuse pretrial interview or deposition. *See* Ariz. Const. art. 2, § 2.1. I dissent from this conclusion because the record shows what the majority neglects to mention: the state has alleged that this mother is an unindicted co-conspirator and

---

**2.** We note that Mrs. Knapp is also a "victim" within the provisions of Rule 39, Ariz.R.Crim.P. 17 A.R.S., a court-enacted rule which became

effective on August 1, 1989. However, that rule does not provide a victim an absolute right to refuse to submit to an interview.

principal in the murder of her own children.[3]

Of course, the constitutional amendment was never intended to give the rights of a victim to a person whom the state alleges to be a murderer. Although this court usually considers the obvious intent behind the words of the constitution, in this case it chooses to look no further than what it describes as "plain language." Even the plain language, however, does not support such a reversal of the basic purpose of the victims' bill of rights.

The constitutional amendment excludes "the accused" from the definition of "victim." Ariz. Const. art. 2, § 2.1(C); at 239, 823 P.2d at 687. Citing no authority, the majority concludes that one whom the state alleges to be a principal in the murder is not an "accused" in the "ordinary meaning" of the word. At 239, 823 P.2d at 687. According to the dictionary, however, an accused is "one charged with an offense; *esp:* the defendant in a criminal case." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY at 14 (1976).[4] Thus, the dictionary definition of "accused" includes, but is not limited to, the defendant in a criminal case. The drafters of the constitutional provision did not use the word "defendant" but, instead, chose the broader term—"accused." As in this case, one may be "accused" and never arrested or prosecuted as a defendant.

The majority attempts to shore up its otherwise unsupported definition of "accused" by reference to the Victims' Rights

Implementation Act, A.R.S. § 13–4401(1). At 239, 823 P.2d at 687. The act is effective, however, only from December 31, 1991, and is thus entirely irrelevant to our decision today. More important, the majority offers neither explanation nor support for its implicit assumption that the scope of a constitutional guarantee can be amended by legislation.[5] A.R.S. § 13–4401(1) defines "accused" in terms equivalent to the definition of "defendant," while the constitution uses the broader term "accused." In addition, if we are to look to the legislature for guidance in interpreting a constitutional provision, we ought not ignore the fact that, in a provision *already* in effect, the legislature expressed its intent that the act protect *"innocent* persons." Laws 1991, Ch. 229, § 2 (captioned "Legislative intent") (effective January 1, 1992) (emphasis added). As the state's treatment of Mrs. Knapp illustrates, the fact she has not been indicted is hardly probative of her innocence.

The majority argues that we should not permit "trial courts ... to make ad hoc exceptions" or "encourage defendants or others to assert that the person designated as the victim should, instead, be considered to be a suspect." At 239, 823 P.2d at 687. I agree, but this exceptional case presents neither danger. Mrs. Knapp has not been accused by any ad hoc suggestion of the *defendant.* She is an "accused" because the *state's pleadings* accuse her of being a principal in the murder.[6]

---

**3.** Mr. Knapp was charged both with first degree murder *and* as an accessory to murder. The state has "acknowledged that the co-conspirator would be the defendant's ex-wife, [Mrs.] Knapp." Minute Entry of Judge Martone, August 22, 1991.

**4.** The first definition of the verb "accuse" is "to charge unequivocally with a specified or implied wrong or fault often in a condemnatory or indignant manner <the courtiers *accused* their queen> <the planes were *accused* of spreading cholera, typhus, and bubonic plague ...>." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY at 14 (1976). This indeed is the "ordinary meaning" of the word. It is only the second meaning listed—"to charge with an offense judicially or by a public process"—that pertains to the judicial process, and even that definition is met in this case.

**5.** The victims' bill of rights grants the legislature the power to "define, implement, preserve and protect the rights guaranteed to victims." Ariz. Const. art. 2, § 2.1(D). That provision does not, however, confer upon the legislature or any other body the authority to redefine the *scope* of those rights.

**6.** The majority asserts that the state's charge implicating Mrs. Knapp was only an "alternate allegation." At 238, 823 P.2d at 686. What makes that allegation "alternate" instead of primary is not disclosed by the record or mentioned by the majority, nor does the majority explain what difference it would make. Whether alternate or primary, the allegation is formally made in the charging papers, and the bottom line is the same: the state formally implicates Mrs. Knapp as a principal in the murder.

The majority points out that although I would affirm the trial court's order on the theory that Mrs. Knapp is an accused, "the trial court did not consider her to be an 'accused,'" but instead "held that [she] was not a 'victim,'" and that "the drafters ... did not intend to include" suspects as "victims." At 239, 823 P.2d at 687. I respond with two points. First, what difference does it make if the trial court reached the right result for the wrong reason? The thrust of trial judge's order is that Mrs. Knapp is not a "victim" as that word is used in the amendment. That conclusion is correct because if Mrs. Knapp is an "accused" she is not a victim. Second, the trial court is also correct on the question of intent. Constitutional provisions should not be interpreted to reach absurd results. *Ward v. Stevens,* 86 Ariz. 222, 228–29, 344 P.2d 491, 497–98 (1959); *Bussanich v. Douglas,* 152 Ariz. 447, 450, 733 P.2d 644, 647 (Ct.App.1986). It is absurd to believe that the protections of the victims' bill of rights were intended to apply to one whom the state has named as a principal in the murder. The trial court was thus correct in both result and reasoning.

The victims' bill of rights was adopted to address the hardships suffered by victims, not to help alleged criminals whenever the strategic ends of the prosecutor are served. Today's decision does just that. Mr. Knapp is now the defendant and Mrs. Knapp has been given immunity in return for her testimony. The majority holds, therefore, that Mrs. Knapp enjoys all the rights of a "victim." If, however, the state had chosen a different strategy, making Mrs. Knapp the defendant and naming Mr. Knapp as the unindicted co-conspirator and principal, it could have used his testimony to try to convict Mrs. Knapp. In the majority's view, Mrs. Knapp would then be the "accused" and Mr. Knapp a "victim" entitled as surviving father to all the benefits of the victims' bill of rights.

Surely those who worked for the victims' bill of rights had something better in mind than making a victim's status wholly con-

* Corcoran, J., of the Supreme Court, recused himself and did not participate in the determi-

tingent on the prosecutor's strategy. The constitutional amendment was never intended to serve or protect those accused by the state of being principals in the crime. The words of the provision do not force us to defy common sense, and we should not. I therefore dissent.