912 P.2d 1297

**STATE of Arizona, Appellee,**

v.

**Fred Woodrow ROSCOE, Appellant.**

**No. CR–95–0023–PR.**

Supreme Court of Arizona,
En Banc.

Feb. 29, 1996.

Grant Woods, Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, Linda L. Knowles, Assistant Attorney General, Phoenix, for Appellee.

Susan A. Kettlewell, Pima County Public Defender by Kristine Maish, Deputy County Public Defender, Tucson, for Appellant.

## OPINION

MOELLER, Justice.

### STATEMENT OF THE CASE

In consolidated cases arising from two separate arrests, a Pima County jury convicted Fred Roscoe (defendant) of two counts of aggravated assault on a peace officer, one

count of disorderly conduct, and one count of resisting arrest. After the court of appeals affirmed, *State v. Roscoe,* 182 Ariz. 332, 897 P.2d 634 (App.1994), defendant filed a petition for review with this court.

A.R.S. § 13–4433(F) and Rule 39(b)(11) of the Arizona Rules of Criminal Procedure both deny victim status to peace officers while acting in the scope of their official duties. Defendant's petition for review contends that the court of appeals erred by declaring both the statute and the rule to be unconstitutional restrictions on the Victims' Bill of Rights. *See* Ariz. Const. art. II, § 2.1. We granted review and have jurisdiction pursuant to Ariz. Const. art. VI, § 5(3), and Rule 31.19, Ariz.R.Crim.P.[1]

### QUESTION PRESENTED

**Are the provisions of A.R.S. § 13–4433(F) and Rule 39(b)(11), Ariz.R.Crim. P., which deny on-duty peace officers status as "victims," unconstitutional because they conflict with the definition of "victim" set forth in the Arizona Constitution, Article II, § 2.1(C)?**

### FACTS

**The First Case**

In June 1991, defendant visited Alma Green's apartment one evening around midnight. Defendant and Green began fighting and woke a neighbor, who called 911. Two Tucson police officers, Burrow and Anemone, arrived at the scene but were unable to subdue defendant. After several back-up officers arrived at the scene, police were finally able to subdue and arrest defendant. Defendant was indicted for one count of aggravated assault on a peace officer and one count of aggravated assault with a deadly weapon or dangerous instrument. Both counts named Officer Burrow as the victim.

**The Second Case**

In March 1992, Tucson police again investigated an incident of domestic violence involv-

ing defendant. Officer Egurrola reached the scene first, called for backup, and Officer Wilson arrived. A substantial altercation developed. Ultimately, with the help of additional back-up officers, defendant was subdued and arrested.

The indictment for this second incident included two counts of aggravated assault on a peace officer, with Officers Wilson and Egurrola named as the victims in those two counts. The cases were consolidated for trial.

### LOWER COURT RULINGS

Prior to trial, defendant filed a Motion for Witness Interviews, in which he requested that Officers Wilson and Egurrola, the two victims in the second case, be ordered to attend witness interviews. The trial court denied the motion, holding that the officer victims were entitled to refuse interviews under the Victims' Bill of Rights. After the case was re-assigned to a different judge for trial, defendant again sought interviews with the police officers. His request was also denied by this judge, who agreed with the first judge that the provisions of § 13–4433(F) conflicted with the constitutional right of a victim to refuse an interview. Roscoe was subsequently convicted of two counts of aggravated assault on a police officer (Burrow and Wilson), resisting arrest, and disorderly conduct.

The court of appeals affirmed the convictions, *Roscoe,* 182 Ariz. 332, 897 P.2d 634 (App.1994), agreeing with the trial courts' conclusion that A.R.S. § 13–4433(F) and its rules counterpart, Ariz.R.Crim.P. 39(b), unconstitutionally abrogate rights provided in the Arizona Constitution. The court of appeals pointed out that the Victims' Bill of Rights denies victim status only to those who are in custody and those who are the accused. *Roscoe,* 182 Ariz. at 335, 897 P.2d at 637. "[P]eace-officer victims are not excepted from this definition and are therefore

---

1. We also originally granted review on a secondary discovery issue which we have concluded need not be further addressed in this case. Accordingly, the grant of review as to that issue is dismissed as improvidently granted.

entitled to the same constitutional protections afforded to other victims." *Id.* Defendant petitioned this court to reverse the court of appeals' holding. We agree with the court of appeals' resolution of this issue and affirm the trial court.

## DISCUSSION

**I. Are the provisions of A.R.S. § 13–4433(F) and Rule 39(b)(11), Ariz. R.Crim.P., which deny peace officers status as "victims," unconstitutional because they conflict with the definition of "victim" set forth in the Arizona Constitution, Article II, § 2.1(C)?**

■ In 1989, this court promulgated the first Victims' Rights rule in Arizona; Rule 39, Rules of Criminal Procedure. Necessarily, its applicability was limited to the judicial department. In the election of 1990, the people of Arizona voted to constitutionalize a much broader Victims' Bill of Rights (the Bill) and granted statutory implementation powers to the legislature. Ariz. Const. art. II, § 2.1. The Bill provides victims of crimes with several constitutional rights, including the right "[t]o refuse an interview, deposition, or other discovery request by the defendant, the defendant's attorney, or other person acting on behalf of the defendant." Ariz. Const. art. II, § 2.1(A)(5). The Bill defines a victim as "a person against whom the criminal offense has been committed ... except if the person is in custody for an offense or is the accused." Ariz. Const. art. II, § 2.1(C). The Bill expressly grants to the legislature "the authority to enact substantive and procedural laws to define, implement, preserve and protect the rights guaranteed to victims by this section." Ariz. Const. art. II, § 2.1(D).

In 1991, the legislature passed an extensive Victims' Rights Implementation Act (the Act) pursuant to its powers under § 2.1(D). *See* A.R.S. §§ 13–4401 to –4438. The 1991 Act did not deny peace officer victims the right to refuse interviews. *See* A.R.S. § 13–4433. Following that enactment this court amended Rule 39 to conform to the Act. An accompanying comment observes:

*In general,* it appeared that the definition of victim should be a generous one. Law enforcement officers, for example, should not be excluded from the rights enjoyed by victims because of their employment in the criminal justice system.

(Emphasis added).

In 1992, the legislature added a provision to the Act dealing with victim interviews:

For the purposes of this section [dealing only with pretrial interviews], a peace officer shall not be considered a victim if the act that would have made him a victim occurs while the peace officer is acting in the scope of his official duties.

A.R.S. § 13–4433(F). Following that enactment, this court again revised and amended its Rule 39 to conform to the legislative provisions. One of those revisions appeared as a portion of Rule 39(b)(11) as follows:

*For purposes of a pretrial interview,* a peace officer shall not be considered a victim if the act that would have made him or her a victim occurs while the peace officer is acting in the scope of his or her official duties.

(Emphasis added). Thus, the amended rule allowed police officers to maintain victim status as a general rule, but carved out an exception for the limited purpose of pretrial interviews. In this respect, our Rule 39(b)(11) mirrored the 1992 legislative provisions.

Although this statutory amendment (and subsequent rule amendment) did not become effective until after defendant's convictions in these consolidated cases, it was called to the trial court's attention before closing arguments and in post-trial motions. The court of appeals addressed the constitutionality of the amended statute and the earlier court rule simultaneously, as do we. *See* 182 Ariz. at 335, 897 P.2d at 637.

In holding that the police officer victims, like other victims, had a right to decline interviews, the court of appeals relied, in part, on this court's decision in *Knapp v.*

*Martone*, 170 Ariz. 237, 823 P.2d 685 (1992). In *Knapp*, we held that "the plain language of this new amendment" provides for only two types of people who are "excluded from the protection of the Victims' Bill of Rights ... those 'in custody for an offense' or those who are 'the accused.'" 170 Ariz. at 239, 823 P.2d at 687. We held in *Knapp* that the trial court erred by denying victim status to an unindicted principal "who was, is, or could be a suspect in a case." *Id.*

Defendant claims that the court of appeals erred when it applied "the plain language of the Victims' Bill of Rights" analysis of *Knapp*, thus "overlook[ing] the spirit and intent of the Proposition 104 ballot initiative." Defendant asks us to find an intent at variance with the clear language of the constitutional provision. He cites *Schecter v. Killingsworth*, 93 Ariz. 273, 380 P.2d 136 (1963), and *State v. Lycett*, 133 Ariz. 185, 650 P.2d 487 (1982), as proof that this court has a duty to construe legislation such as the Implementation Act so as to be constitutional. Those cases do not support his argument.

*Schecter* involved the interpretation of ambiguous legislation. 93 Ariz. at 282, 380 P.2d at 142. The constitutional provision in this case is not ambiguous. The portion of *Lycett* which defendant cites for the proposition that this court should construe a statute as constitutional whenever possible relates to claims of vagueness and overbreadth. 133 Ariz. at 190, 650 P.2d at 492. No such claim is involved here. Defendant presents no authority, nor are we aware of any, which supports the proposition that a court is empowered to depart from the unambiguous language of a constitutional provision.

▮ Were this court to accept defendant's invitation to embark on the task of determining the alleged legislative intent behind the Victims' Bill of Rights, we would do so at the expense of venerable principles of statutory construction. "[W]here a constitutional provision is clear, no judicial construction is required or proper." *Pinetop–Lakeside Sanitary Dist. v. Ferguson*, 129 Ariz. 300, 302, 630 P.2d 1032, 1034 (1981); *see also* *State v. Williams*, 175 Ariz. 98, 100, 854 P.2d 131, 133 (1993) ("If the language [of the statute] is plain, we need look no further."). In this case, we are presented with an unambiguous constitutional definition of "victim." The authors of the Victims' Bill of Rights clearly defined victim and just as clearly defined two exceptions to victim status in Ariz. Const. art. II, § 2.1(C), which states, in part, that "'[v]ictim' means a person against whom the criminal offense has been committed ... except if the person is in custody for an offense or is the accused." "A well established rule of statutory construction provides that the expression of one or more items of a class indicates an intent to exclude all items of the same class which are not expressed." *Pima County v. Heinfeld*, 134 Ariz. 133, 134, 654 P.2d 281, 282 (1982). The language of the constitutional provision is plain, and we may look no further.

Defendant alternatively contends that the legislation does not restrict the constitutional provision but merely supplements it, citing *Direct Sellers Ass'n v. McBrayer*, 109 Ariz. 3, 5, 503 P.2d 951, 953 (1972). The short answer to this contention is that the statute restricts the constitutional definition of victim. In any event, *Direct Sellers* involved a different question than the one involved here. In *Direct Sellers*, this court addressed whether the legislature could add a qualification to Article IV, Part 1, § 1(9) of the Arizona Constitution, the self-executing constitutional provision setting forth the form and content requirements for circulating a referendum petition. 109 Ariz. at 5, 503 P.2d at 953. According to that section, the person circulating the petition must verify by affidavit that each person signing the petition did so in the presence of the affiant, and was, in the belief of the affiant, a qualified elector.

In 1953, the legislature enacted a provision which also required that the person circulating a referendum petition be a qualified elector. 109 Ariz. at 6, 503 P.2d at 954; A.R.S. § 19–112(C). In *Direct Sellers*, the appellants contended that the legislature could not supplement self-executing provisions of the constitution. *Id.* at 4, 503 P.2d

at 952. We held that there was no absolute restriction on legislative enactments merely because a constitutional provision was self-executing. *Id.* at 5, 503 P.2d at 953. In this case, however, the constitution gave victim status to all those who were not included in either of two categories. The legislature denied victim status to a third category, thereby reducing the scope of victims' rights provided in the constitution.

Like *Direct Sellers,* the cases cited in defendant's Notice of Supplemental Authority are distinguishable. In *Lou Grubb Chevrolet v. Industrial Comm'n,* 171 Ariz. 183, 190, 829 P.2d 1229, 1236 (App.1991), the court held that the legislature could properly add workers' compensation coverage for risks which were not mandated to be covered by the constitution. The court cited precedent showing that, although the constitution required the legislature to provide specified workers' compensation coverage, "it did not restrict the legislature's power to provide additional coverage." *Id.* at 188, 829 P.2d at 1234, *citing Goodyear Aircraft Corp. v. Industrial Comm'n,* 62 Ariz. 398, 158 P.2d 511 (1945)).

In *Lou Grubb,* the court explained why it did not apply the construction maxim, *expressio unius est exclusio alterius* (expression of one thing is the exclusion of another), which we apply here. It noted that the maxim could not be used to deny the legislature its power to enact workers' compensation coverage, so long as its exercise of the power did not "interfere with, frustrate, or to some extent defeat the exercise of power expressly granted." *Lou Grubb,* 171 Ariz. at 190, 829 P.2d at 1236, *citing Atkinson, Kier Bros., Spicer Co. v. Industrial Comm'n,* 35 Ariz. 48, 53, 274 P. 634, 635 (1929)). We find the maxim useful in this case because the legislative provision at issue interferes with rights provided by the Arizona Constitution.

The conflict between constitution and legislation in this case resembles more closely the conflict at issue in *Turley v. Bolin,* in which the court of appeals held that a legislative provision requiring that initiative petitions be filed five months prior to the ensuing general election did not meet the standard set forth by this court in *Direct Sellers.* 27 Ariz.App. 345, 347–49, 554 P.2d 1288, 1290–92 (1976). Because the constitution contained a voter-enacted section which specified that such petitions could be filed "not less than four months" prior to the general election, the court could not "say that this substantial reduction [in the available time for filing initiative petitions] when viewed in this context would not 'unreasonably hinder or restrict' the right of the people to initiate legislation.…" *Id.* at 349–50, 554 P.2d at 1292–93.

The *Turley* court recognized that "the legislative authority, acting in a representative capacity only, was in all respects intended to be subordinate to direct action by the people." 27 Ariz.App. at 348, 554 P.2d at 1291, *quoting Whitman v. Moore,* 59 Ariz. 211, 216–17, 125 P.2d 445, 450–51 (1942)). Thus, although the language of the constitutional provision ("not less than four months") was technically consistent with the language of the legislative enactment (five months), the court refused to allow the legislature to encroach upon the people's right to govern themselves. *Id.* at 350, 554 P.2d at 1293 ("When considered in [the context of the important legislative rights reserved in the people], the constitutional provision must be construed as reserving a minimum filing right in the people, not subject to further derogation by the legislature.").

Unlike *Turley,* the instant case does not directly raise issues involving the process by which the public may enact law. However, it does raise the question of whether the legislature has the authority to reduce the rights provided by a voter-enacted constitutional provision. *Turley* denies the legislature the authority to restrict rights created by the people through constitutional amendment, and other cases similarly limit the power of the courts. *See State v. Lamberton,* 183 Ariz. 47, 50, 899 P.2d 939, 942 (1995) ("[T]he implementing statutes and [court] rules cannot eliminate or narrow rights guaranteed by the state constitution."); *see also Marquez v.*

*Rapid Harvest Co.,* 1 Ariz.App. 562, 565, 405 P.2d 814, 817 (1965) ("It is our absolute duty to protect constitutional rights."), *citing Bristor v. Cheatham,* 75 Ariz. 227, 234, 255 P.2d 173, 177 (1953)). We therefore analyze our own Rule 39(b)(11) as closely as the legislative provision and come to the same conclusion regarding both the court rule and the Implementation Act.

The *Turley* principle is especially compelling here because the *Turley* court refused to allow the legislative provision to stand even though "the concerns voiced by appellants were in all probability among the important considerations influencing the framers of our constitution...." *Id.* at 349, 554 P.2d at 1292. Thus, even assuming, *arguendo,* the validity of Roscoe's argument that the framers of the Victims' Bill of Rights intended to deny peace officers some coverage under the Bill, we may not diminish clearly-expressed constitutional rights to correspond to our (or to the legislature's) perception of the people's intent.

Defendant also contends that the legislature in its authority under Ariz. Const. art. II, § 2.1(D) to "enact substantive and procedural laws to define, implement, preserve and protect the rights guaranteed to victims" by the Victims' Bill of Rights, may revise the protections provided by the Bill. The argument ignores the structure of the Bill itself. The Bill sets forth a series of twelve rights to which a victim is entitled. *See* Ariz. Const. art. II, § 2.1(A)(1)–(12). The Bill also defines "victim," thereby establishing who is entitled to the preceding twelve rights. Ariz. Const. art. II, § 2.1(C). Finally, the Bill grants to the legislature "the authority to enact substantive and procedural laws to define, implement, preserve and protect the rights guaranteed to victims by this section...." Ariz. Const. art. II, § 2.1(D).

The Bill grants to the legislature the authority to define the rights created therein, not the power to redetermine who is entitled to them. To this extent, *Turley* is on point. It would run counter to *Turley* for us to hold that either we or the legislature can exclude from the Bill victims who have already been included by the people. Such a result would infringe on the sovereign power of the voting public.

The provisions of the Implementation Act (A.R.S. §§ 13–4401 to –4437) are generally in accord with our interpretation of the powers granted in § 2.1(D) of the Arizona Constitution. Aside from the offending provision involved here, the Implementation Act does just what the legislature is empowered to do under their "authority to define, implement, preserve, and protect the rights guaranteed to victims." For example, the Act specifies the manner in which a victim who is unable to exercise a right may be represented by someone else. *See* A.R.S. § 13–4403. It describes in far more detail than the constitutional provision information to which a victim is entitled, who must provide the information, and when it must be provided. *See e.g.,* A.R.S. §§ 13–4405 to –4417.

These provisions, and the Implementation Act in general, illustrate the type of power the voting public granted to the legislature by giving it the power "to define, implement, preserve, and protect the rights guaranteed to victims." The people, in their legislative power, enacted a constitutional provision setting forth victims' rights, but they could not hope to do so with the specificity required to address all of the procedural and substantive issues that might accompany the enactment of such a bill.

Lastly, defendant claims that the definition of victim in the Bill infringes on his right to due process by denying him access to evidence "favorable to an accused" according to the United States Supreme Court decision in *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963). *Brady* is inapposite. In *Brady,* the prosecution withheld the statement of defendant's companion that the companion had actually committed the murder for which Brady was tried. *Id.* at 84, 83 S.Ct. at 1195. Here, defendant received all the discovery to which he was entitled under our state's liberal discovery rules. The victims have a constitu-

tional right to decline interviews.[2] Regardless of whether some victims' rights may in some cases be required to give way to defendant's due process rights, *see State ex rel. Romley v. Superior Court,* 172 Ariz. 232, 240, 836 P.2d 445, 453 (App.1992), the victim's right to decline an interview has been considered absolute. *See State v. O'Neil,* 172 Ariz. 180, 182, 836 P.2d 393, 395 (App.1991) ("After *Warner* it should be clear that the Victims' Bill of Rights abrogated a defendant's right under Rule 15 to interview or otherwise seek discovery from an unwilling victim."); *Day v. Superior Court,* 170 Ariz. 215, 217, 823 P.2d 82, 84 (App.1991) ("The Victims' Bill of Rights precludes the trial court from ordering the deposition of a victim who has indicated an unwillingness to be interviewed.").

## DISPOSITION

To the extent that they conflict with the definition of the term "victim" as provided in the Victims' Bill of Rights, A.R.S. § 13–4433(F) and Rule 39(b)(11), Ariz.R.Crim.P., are unconstitutional. The court of appeals' opinion is vacated. The convictions and sentences are affirmed.

FELDMAN, C.J., ZLAKET, V.C.J., and CORCORAN and MARTONE, JJ.

---

**2.** Defendant's Petition for Review questions whether an officer who witnesses one crime may claim immunity from an interview concerning that crime by reason of being a victim of another crime. Defendant cites only a request he made for disclosure of internal police records, not a request for interviews. The only motion concerning witness interviews (apart from the one involving Detective Griffis), was defendant's motion requesting interviews with Officers Wilson and Egurrola. Defendant claimed that those two officers, victims in the 1992 case, were merely being called as "subsequent bad act" witnesses in the 1991 case, and thus should be subject to interviews for that case. This argument ignores reality. Neither Officer Wilson nor Officer Egurrola testified regarding the 1991 incident. They were "subsequent bad act" witnesses in the 1991 case only insofar as they testified regarding the 1992 incident in which they were victims. Thus, this case does not present an issue concerning an officer invoking a victim's privilege on one crime by reason of being a victim of a different crime.