290 P.3d 1226

**STATE of Arizona ex rel. William G. MONTGOMERY, Maricopa County Attorney, Petitioner/Appellant,**

v.

**Commissioner Colleen MATHIS; Commissioner Linda McNulty; Commissioner Jose Herrera, Respondents/Appellees.**

**Arizona Independent Redistricting Commission, an Independent Constitutional Body, Plaintiff/Petitioner/Appellee,**

v.

**Thomas C. Horne, in his official capacity as Attorney General of the State of Arizona, Defendant/Respondent/Appellant.**

No. 1 CA–CV 12–0068.

Court of Appeals of Arizona, Division 1, Department D.

Dec. 11, 2012.

William G. Montgomery, Maricopa County Attorney By Bruce P. White, M. Colleen Connor, Phoenix, Attorneys for Petitioner/Appellant State of Arizona.

Gallagher & Kennedy, P.A. By Paul K. Charlton, Quintin H. Cushner, Phoenix, Attorneys for Respondent/Appellee Mathis.

Coppersmith, Schermer & Brockelman, PLC By Andrew S. Gordon, Roopali Hardin Desai, Phoenix, Attorneys for Respondent/Appellee McNulty.

Timothy Nelson, P.L.L.C. By Timothy A. Nelson, Phoenix, Attorneys for Respondent/Appellee Herrera.

Osborn Maledon, P.A. By Mary R. O'Grady, Joseph N. Roth, Phoenix, and Ballard Spahr, L.L.P. By Joseph A. Kanefield, Brunn W. Roysden, III, Phoenix, Attorneys for Plaintiff/Petitioner/Appellee Arizona Independent Redistricting Commission.

## OPINION

KESSLER, Judge.

¶ 1 Petitioner/Appellant, State of Arizona ex rel. William G. Montgomery, Maricopa County Attorney, and Thomas C. Horne, the Arizona Attorney General (collectively "the State")[1] appeal the superior court's judgment in favor of the Arizona Independent Redistricting Commission ("the IRC") and Commissioners Mathis, McNulty, and Herrera ("Commissioners") (collectively "Appellees"). On appeal, the State asserts that the court erred in determining that: (1) Arizona's Open Meeting Law ("OML"), Arizona Revised Statutes ("A.R.S.") sections 38–431

1. As explained at Footnote 4 *infra,* the superior court disqualified the Attorney General from representing the State. However, the Attorney General is still a party to the litigation. For purposes of convenience, we will refer to the Appellant as the State.

to –431.09 (2011 & Supp. 2012),[2] does not apply to the IRC; and (2) the IRC's communications at issue here enjoy legislative immunity. The State also argues that the court erred by failing to determine that the IRC lacked the capacity to sue the Attorney General for declaratory and injunctive relief related to the OML and legislative immunity. Finally, the State asserts that if the IRC is subject to the OML, then the Maricopa County Attorney is vested with authority pursuant to A.R.S. § 38–431.06 to conduct an investigation of alleged OML violations and the superior court cannot enjoin such an investigation.

¶ 2 We determine that the IRC has capacity to seek the declaratory and injunctive relief sought here. We also hold that the OML applies to the IRC to the extent it does not conflict with the relevant provisions of the Arizona Constitution establishing the IRC, and the communications here are not protected by legislative immunity insofar as they relate to hiring a mapping consultant. However, because the State has not appealed the superior court's decision that there is no reasonable cause to support the investigation of the acts alleged to be in violation of the OML, we affirm the entry of summary judgment in favor of the Appellees and the injunction against a further investigation under the OML of the alleged acts.

## FACTUAL AND PROCEDURAL BACKGROUND

¶ 3 In August 2011, the Attorney General issued written civil investigative demands ("CIDs") to the IRC commissioners.[3] According to the Attorney General, the IRC chairperson called the commissioners individually to discuss the selection of a mapping consultant for the IRC. It is undisputed for purposes of summary judgment that those phone calls were made and that at a later public meeting the IRC voted to hire a mapping consultant. No one challenges that the

public meeting was held in accordance with the OML.

¶ 4 After the Commissioners refused to comply with the CIDs, the Attorney General filed a petition seeking to enforce the demands pursuant to his authority under A.R.S. § 38–341.06 (Maricopa County Superior Court Case No. CV2011–016442). The Appellees then filed a complaint against the Attorney General seeking: (1) injunctive relief and a declaratory judgment that the IRC was not subject to the OML; and (2) a determination that the Commissioners enjoyed legislative privilege for the acts under investigation (Maricopa County Superior Court Case No. CV2011–017914).

¶ 5 The Attorney General moved to dismiss the IRC's lawsuit, asserting that the IRC lacked standing to sue for the purposes stated in the complaint. The Attorney General argued that the IRC had the authority to sue and be sued only as granted by the Arizona Constitution, which is limited to suits involving the redistricting plan and the adequacy of resources for its operation.

¶ 6 The superior court consolidated the two actions and the IRC simultaneously responded to the motion to dismiss and filed a motion for summary judgment in which the Commissioners joined. The IRC asserted that pursuant to its constitutional charter it had standing to sue to fulfill its constitutional mandate of independence and, in any event, the court should waive any standing requirements because the issues raised were of great public importance and would not result in the issuance of an advisory opinion. The IRC also maintained that it was entitled to summary judgment on its complaint because the IRC was not subject to the OML, but rather to the separate mandate of openness found in Article 4, Part 2, Section 1(12), of the Arizona Constitution (hereinafter "Open Meeting Clause"). The IRC argued that the Open Meeting Clause not only supplanted the OML, but also that Article 4, Part 2, Section 1(10), of the Arizona Constitution

---

**2.** We cite the current version of applicable statutes when no revisions material to this decision have occurred.

**3.** The CIDs requested testimony under oath, *see* A.R.S. § 38–431.06(B)(2)–(3), and production of documents, *see* A.R.S. § 38–431.06(B)(4), including any documents reflecting correspondence between IRC commissioners.

provides the only mechanism for enforcement of compliance with the Open Meeting Clause (removal by the Governor with concurrence of the Senate), which does not include authority to use investigative powers pursuant to A.R.S. § 38–431.06. The IRC also maintained that principles of separation of powers confirmed that the Attorney General could not investigate the IRC under the powers granted by the OML. The IRC alternatively argued that, even assuming the OML applies to the IRC, the CIDs invaded the IRC commissioners' legislative privilege. Finally, the Commissioners contended that there was no reasonable cause for the investigation.

¶ 7 The State responded to the IRC's motion and also filed a cross-motion for summary judgment.[4] The State argued that because the ballot initiative and constitutional amendment creating the IRC did not expressly exempt it from the OML, the OML must apply to the IRC, and that the Open Meeting Clause does not conflict with the OML, making the laws harmonious. The State also argued that legislative privilege does not prevent the investigation here because the decision to choose a mapping consultant was made in private conversations before a public meeting, was not about the actual selection of the consultant, and the selection of the consultant was administrative, not legislative, in nature.

¶ 8 At oral argument on the motions, the State informed the superior court that it was no longer pursuing a summary judgment ruling that the serial communications alleged in the petition for enforcement violate the OML.

¶ 9 The superior court denied the State's motion to dismiss and its cross-motion for summary judgment, and granted the IRC summary judgment. First, the court found that it was unnecessary to determine whether the IRC's limited jural status enabled it to seek a declaratory judgment. Rather, any standing requirement did not apply because of the public interest and importance of re-solving the issue of whether the IRC is subject to the OML.

¶ 10 Second, the court held the OML does not apply to the IRC. It reasoned that, unlike other constitutionally created boards and commissions, the constitution does not expressly permit the legislature to enact rules for the IRC; instead the constitution itself provides detailed rules for the IRC. The court noted that the OML existed at the time the voters amended the constitution and created the IRC, and they could have subjected the IRC to the OML had it been desired by incorporating the OML by reference, reiterating its requirements in the constitution, or by authorizing the legislature to prescribe additional rules. The court also noted that the voters approved entirely new open meeting language that, compared to the OML, was more stringent in some respects and less stringent in others. The court determined that the Open Meeting Clause was not coextensive with the OML and, although openness of IRC meetings was important, it was more important to insulate the IRC from interference by political branches which would occur by subjecting the IRC to the OML.

¶ 11 Third, the superior court alternatively determined that the doctrine of legislative immunity protects the official acts of the IRC and its commissioners, and the choice of a mapping consultant is a legislative task rather than an administrative act, thus making the communications involved privileged. The court noted that the allegation of wrongdoing was not about improper handling of the application process or determining contractual compensation, but rather the IRC commissioners failed to perform official legislative acts by improperly agreeing on a consultant.

¶ 12 Fourth, the superior court determined that because the State conceded it was not seeking a ruling whether the alleged serial communications were a violation of the OML, even if the court found the OML applied to the IRC, "it would appear that the State has not stated 'reasonable cause to believe there may have been a violation' of the [OML]" and

---

4. After argument on the Commissioners' and IRC's motion for disqualification, the Attorney General was disqualified and the Maricopa County Attorney was substituted as counsel for the State. The Attorney General's disqualification is not at issue here.

"the Court would correctly dismiss the State's action on that basis."

¶ 13 Finally, the court concluded that given its holdings, neither the Attorney General nor any county attorney may proceed with the investigation except as provided by the Arizona Rules of Procedure for Special Actions.

¶ 14 The court issued a final signed judgment incorporating the above holdings, stating in part as follows:

> [T]here is no basis for the prosecution of the investigative demands served on the individual IRC commissioners. Likewise, even if the [OML] applied to the IRC, the State has not stated reasonable cause to believe there may have been a violation of A.R.S. § 38–431.06.

Thus, the court also "enjoin[ed] the State of Arizona, through the Attorney General, the Maricopa County Attorney or any other County Attorney, from proceeding with an [OML] investigation of the IRC and its Commissioners."

¶ 15 The State timely appealed. We have jurisdiction pursuant to A.R.S. §§ 12–120.21 (2003) and –2101(A)(1) (Supp.2012).[5]

## ISSUES ON APPEAL

¶ 16 The State raises three issues on appeal, whether: (1) the IRC lacks capacity to seek a declaratory judgment regarding the applicability of the OML and legislative immunity; (2) the ballot initiative creating the IRC exempted it from statutory requirements, including the OML; and (3) legislative immunity applies to the IRC's process of selecting a mapping consultant, and therefore shields it from inquiries about potential violations of the OML.

## STANDARDS OF REVIEW

■ ¶ 17 We review *de novo* whether summary judgment is warranted, including whether genuine issues of material fact exist and whether the superior court properly applied the law. *Dreamland Villa Cmty. Club, Inc. v. Raimey*, 224 Ariz. 42, 46, ¶ 16, 226 P.3d 411, 415 (App.2010). We will affirm the superior court if its determination "is correct for any reason, even if that reason was not considered" by the court. *Hill v. Safford Unified Sch. Dist.*, 191 Ariz. 110, 112, 952 P.2d 754, 756 (App.1997).

¶ 18 We review the superior court's denial of the State's motion to dismiss for a lack of subject matter jurisdiction *de novo*. *See Satterly v. Life Care Ctrs. of Am., Inc.*, 204 Ariz. 174, 177, ¶ 5, 61 P.3d 468, 471 (App.2003); *see also Coleman v. City of Mesa*, 230 Ariz. 352, 355, ¶ 7, 284 P.3d 863, 866 (2012). Issues of standing and capacity to sue are questions of law that we review *de novo*. *Gemstar Ltd. v. Ernst & Young*, 185 Ariz. 493, 499, 917 P.2d 222, 228 (1996) (capacity); *Robert Schalkenbach Found. v. Lincoln Found., Inc.*, 208 Ariz. 176, 180, ¶ 15, 91 P.3d 1019, 1023 (App. 2004) (standing).

■ ¶ 19 We review the superior court's interpretation of the constitution and statutes *de novo*. *Circle K Stores, Inc. v. Apache County*, 199 Ariz. 402, 405, ¶ 7, 18 P.3d 713, 716 (App.2001) (stating that this Court is not bound by the superior court's interpretation of a statute or constitutional provision). "Our primary purpose in construing a constitutional amendment is to effectuate the intent of those who framed it and the electorate that approved it. We first examine the plain language of the provision and, if it is clear and unambiguous, we generally subscribe to that meaning." *Id.* at 406, ¶ 9, 18 P.3d at 717 (citation omitted); *see Janson ex rel. Janson v. Christensen*, 167 Ariz. 470, 471, 808 P.2d 1222, 1223 (1991) (stating that we rely on the plain language of the rule or statute if it is unambiguous). "If, however, the constitutional language is ambiguous, or a construction is urged which would result in an absurdity, a court may look behind the bare words of the provision to determine the

---

5. The State challenges the superior court's denial of its motion to dismiss. We have jurisdiction to consider the issue of whether the court erred as a matter of law in denying the motion to dismiss because such determination had an effect on the final judgment. *See Pepsi–Cola Metro. Bottling Co. v. Romley*, 118 Ariz. 565, 568, 578 P.2d 994, 997 (App.1978) (concluding that a timely appeal from a final judgment may "properly place[] before [this Court] the propriety of all prior non-appealable orders").

conditions which gave rise to it and the effect which it was intended to have." *McElhaney Cattle Co. v. Smith,* 132 Ariz. 286, 290, 645 P.2d 801, 805 (1982). We interpret a constitutional "[a]mendment as a whole and in harmony with other portions of the Arizona Constitution." *Ruiz v. Hull,* 191 Ariz. 441, 448, ¶ 24, 957 P.2d 984, 991 (1998); *see City of Phoenix v. Yates,* 69 Ariz. 68, 72, 208 P.2d 1147, 1149 (1949) ("Each word, phrase, and sentence must be given meaning so that no part will be [void], inert, redundant, or trivial.").

■ ¶ 20 "Statutes are presumed constitutional and the burden of proof is on the opponent of the statute to show it infringes upon a constitutional guarantee or violates a constitutional principle." *State v. Casey,* 205 Ariz. 359, 362, ¶ 11, 71 P.3d 351, 354 (2003) (citation omitted).

## DISCUSSION

### I. *Arizona Constitution Article 4, Part 2, Section 1*

¶ 21 In the November 2000 general election, voters passed Proposition 106, which established the IRC as a constitutional entity. *See* Ariz. Const. art. 4, pt. 2, § 1. Prior to the 2000 election, Article 4, Part 2, Section 1 contained two subsections specifying that legislative districts were established by the legislature. Upon the passage of Proposition 106, the constitution was amended to add twenty-one subsections giving that legislative authority to the IRC. Ariz. Const. art. 4, pt. 2, § 1. "[T]he constitutional provisions creating and governing the IRC ... were designed to *remove* redistricting from the political process...." *Ariz. Indep. Redistricting Comm'n v. Brewer,* 229 Ariz. 347, 353, ¶ 24, 275 P.3d 1267, 1273 (2012). Specifically, subsections 1(3) through 1(23) create and govern the IRC. The constitutional provisions are structured in the following manner:

■ Subsections three through nine pertain to the establishment of an IRC every ten years and the selection process for five commission members that comprise the IRC.

■ Subsection ten gives the Governor power to remove a commissioner "for substan-

tial neglect of duty, gross misconduct in office, or inability to discharge the duties of office" provided two-thirds of the senate concurs in the removal and only after the commissioner is served written notice and provided an opportunity to respond.

■ Subsection twelve defines a quorum of the IRC as "[t]hree commissioners, including the chair or vice-chair." It prescribes that official action of the IRC requires "[t]hree or more affirmative votes." The subsection also mandates that "[w]here a quorum is present, the [IRC] shall conduct business in meetings open to the public" and further provides that "48 or more hours public notice" for such meetings is required.

■ Subsection thirteen forbids a commissioner from being a registered public lobbyist or holding a state public office during the commissioner's term and for three years thereafter.

■ Subsections fourteen through seventeen govern the purpose of the IRC to establish congressional and legislative districts, describes the mapping process, and list the goals to consider in creating districts. Specifically, subsection fourteen mandates that "[t]he commencement of the mapping process ... shall be the creation of districts of equal population in a grid-like pattern across the state" and "[a]djustments to the grid shall then be made as necessary to accommodate the [six enumerated] goals" in § 14(A) through (F).

■ Subsection seventeen provides that "[t]he provisions regarding this section are self-executing."

■ Subsection nineteen grants the IRC "procurement and contracting authority" and permits the IRC to hire staff and consultants including legal representation with fiscal oversight from the department of administration.

■ Subsection twenty specifies that the IRC "shall have standing in legal actions regarding the redistricting plan and the adequacy of resources provided for the operation of the [IRC]." It further provides that the IRC "shall have sole authority to determine whether the Arizona attorney general or counsel hired or selected

by the [IRC] shall represent the people of Arizona in the legal defense of a redistricting plan."

■ Subsection twenty-three describes the commissioner's term limits for each IRC and states the IRC "shall not meet or incur expenses after the redistricting plan is completed, except if litigation or any government approval of the plan is pending, or to revise districts if required by court decisions or if the number of congressional or legislative districts is changed."

## II. The State's motion to dismiss and the IRC's standing and capacity to sue

¶ 22 The State moved to dismiss the IRC's complaint seeking injunctive and declaratory relief, arguing that the superior court lacked subject matter jurisdiction. The State argued the IRC has standing only in cases "regarding the redistricting plan and the adequacy of resources provided for the operation of the [IRC]" as provided by Article 4, Part 2, Section 1(20), of the Arizona Constitution, and thus, the IRC failed to state a claim. On appeal, the State asserts that the superior court erred by failing to determine that the IRC lacked the capacity to sue for declaratory and injunctive relief in this case.[6] The State argues that the IRC's capacity to sue was expressly granted in enabling legislation and limits the IRC's capacity to lawsuits regarding the redistricting plan itself and securing adequate resources.

¶ 23 The IRC maintains that the State failed to challenge the superior court's determination that, because the case was of critical public importance and likely to reoccur, prudential concerns with standing can be disregarded. The IRC also argues that the grant of standing in Article 4, Part 2, Section 1(20) is not a limitation on the IRC's capacity to litigate, but actually expands the IRC's standing beyond areas in which its involve-

ment may otherwise be questioned (e.g. challenges to legislative appropriations), and that capacity may be inferred. In addition, the IRC maintains that any questions of standing or capacity are irrelevant because the Commissioners joined in the IRC's motion for summary judgment, and the State did not contest the Commissioners' capacity to sue, thus making any consideration of the IRC's capacity to sue academic. *See Gemstar*, 185 Ariz. at 499, 917 P.2d at 228 (concluding that because corporations had capacity to sue and verdicts were duplicative for both corporations and individual shareholders, court would decline to determine shareholder capacity to sue).

■ ¶ 24 Standing and capacity to sue or be sued are related but distinct concepts. 59 Am.Jur.2d *Parties* § 26 (citing *Graziano v. County of Albany*, 3 N.Y.3d 475, 787 N.Y.S.2d 689, 821 N.E.2d 114, 117 (2004)). Unlike standing, capacity relates to a party's right to come into court to litigate issues. *Id.* (citing *Iowa Coal Mining Co. v. Monroe County*, 555 N.W.2d 418, 428 (Iowa 1996)). It is the status of a person or group to sue and be sued. *Id.* (citing *City of Wellston v. SBC Commc'ns, Inc.*, 203 S.W.3d 189, 193 (Mo.2006)). Capacity does not depend on the nature of a claim in a particular lawsuit and only requires the legal authority to act. *Id.* (citing *Wellston*, 203 S.W.3d at 193). When a party has the legal authority to act it has capacity regardless of whether the party has a justiciable interest in the controversy. *Id.* (citing *Intracare Hosp. N. v. Campbell*, 222 S.W.3d 790, 795 (Tex.Ct.App.2007)).

■ ¶ 25 We do not understand the State to be arguing that the superior court erred by permitting a waiver of standing requirements, but only that it erred by failing to determine the IRC's capacity to sue for declaratory and injunctive relief.[7] We

---

6. The State did not expressly articulate its challenge to the IRC's capacity and instead based its argument on standing. When a challenge is not raised with specificity and addressed in the superior court, it will not generally be considered on appeal. *Winters v. Ariz. Bd. of Educ.*, 207 Ariz. 173, 177, ¶ 13, 83 P.3d 1114, 1118 (App.2004); *see Cahn v. Fisher*, 167 Ariz. 219, 221, 805 P.2d 1040, 1042 (App.1990) ("[A] party cannot raise

new theories on appeal to seek reversal of a summary judgment."). Because, however, the State's argument was essentially a capacity challenge, it is not a new theory and we reach the issue of capacity asserted on appeal.

7. To the extent the State is challenging the IRC's standing, we reject that argument for two reasons. First, unlike the federal courts, in Arizona

conclude the IRC has capacity, as demonstrated by the constitutional provisions creating and governing the entity. *See Schwartz v. Superior Court*, 186 Ariz. 617, 619, 925 P.2d 1068, 1070 (App.1996) ("State administrative agencies have no inherent powers; their powers are limited to those granted by statute."). Specifically, Article 4, Part 2, Section 1(20) explicitly gives the IRC authority to participate in "legal actions" involving two types of issues: (1) the redistricting plan, and (2) adequacy of resources provided to operate the IRC. In the same subsection the IRC is given the authority to determine whether the attorney general or private counsel hired by the IRC "shall represent the people of Arizona in the legal defense of a redistricting plan."

¶ 26 By expressly providing the IRC has the capacity to sue in these two types of cases and the ability to select and hire counsel, the constitution necessarily contemplates the IRC's capacity to sue and be sued. Even the State acknowledges the "Commission's capacity to sue was expressly granted in enabling legislation." As discussed above, capacity does not depend on the type of claim asserted and only relates to whether the entity's status is such that it can come into court. Clearly the constitution provides the IRC the ability to come into court.

▋ ¶ 27 Moreover, the State has not challenged the Commissioners' capacity to sue or their standing in this lawsuit. The Commissioners joined the IRC in its arguments and pleadings. Assuming *arguendo*

standing does not have a constitutional dimension because the state constitution does not have a "case or controversy" requirement. *State v. B Bar Enters.*, 133 Ariz. 99, 101 n. 2, 649 P.2d 978, 980 n. 2 (1982). In Arizona, courts exercise prudential or judicial restraint to address questions of standing to ensure a case is not moot and will be fully developed by the parties. *See id.* The declaratory judgments act is construed liberally, granting standing to any person if there is "an assertion of a right, status, or legal relation in which the plaintiff has a definite interest and a denial of it by the opposing party." *Keggi v. Northbrook Prop. & Cas. Ins. Co.*, 199 Ariz. 43, 45, ¶ 10, 13 P.3d 785, 787 (App.2000) (citation omitted).

Second, standing requirements can be waived if the circumstances are exceptional, such as in cases of critical public importance. *Sears v.*

that the IRC did not have capacity to bring this type of action, the Commissioners have capacity to sue and have standing because they have a direct interest in seeking declaratory and injunctive relief from the CIDs. *See Keggi v. Northbrook Prop. & Cas. Ins. Co.*, 199 Ariz. 43, 45, ¶ 10, 13 P.3d 785, 787 (App.2000); *see also Brewer*, 229 Ariz. at 351, ¶ 15, 275 P.3d at 1271 (holding that court did not have to decide if IRC had standing and capacity to sue since an IRC commissioner had direct interest and capacity to sue after the Governor attempted to remove her from the IRC); *Gemstar Ltd.*, 185 Ariz. at 499, 917 P.2d at 228.

### III. The OML applies to the IRC

¶ 28 The State argues the superior court erred because the court determined that voters would have expressly made the IRC subject to the OML had they so desired. The State maintains that because the OML existed at the time the constitution was amended to create the IRC, and the OML applies to "all public bodies," which includes "commissions" as defined by A.R.S § 38–431(6), voters would have expressly exempted the IRC from the OML had they so intended. In other words, the State argues that an exemption from the OML would have to be express because, in the State's view, "[e]xclusion from the [OML] is the exception, not the rule." The State further argues that because the OML and the language in the Open Meeting Clause are not in conflict, they must be read harmoniously.[8]

*Hull*, 192 Ariz. 65, 71–72, ¶ 25, 961 P.2d 1013, 1019–20 (1998); *see also Rios v. Symington*, 172 Ariz. 3, 5, 833 P.2d 20, 22 (1992) (waiving standing requirement because suit by senate president against governor involved "dispute at the highest levels of state government" and substantial issues of first impression); *Goodyear Farms v. City of Avondale*, 148 Ariz. 216, 217 n. 1, 714 P.2d 386, 387 n. 1 (1986) (waiving standing requirement because case involved claim that statute governing procedures for municipal annexation violated the equal protection clauses of the federal and state constitutions, and the action directly raised issues of great public importance that were likely to recur). This record supports the conclusion that the IRC has standing to bring its action, and if not, any standing requirements are waived.

8. The State also contends that "[i]f the [IRC] commissioners are not subject to the [OML], they

¶ 29 The IRC maintains that the superior court correctly determined that the voters would have expressly subjected the IRC to the OML had they intended, and that the Open Meeting Clause shows the voters' intent to supplant the OML altogether. The IRC further argues that the OML and the Open Meeting Clause are in conflict and cannot be reconciled.

¶ 30 Because we determine that the application of the OML to the IRC is not expressly or impliedly prohibited by the text or structure of the constitution, we determine the IRC is subject to the OML.

## A. The legislature has plenary power to enact laws that do not interfere with the constitution

### 1. Express grants of legislative authority are unnecessary

¶ 31 The legislature need not be expressly granted authority to act when it would otherwise be entitled to do so. *Earhart v. Frohmiller*, 65 Ariz. 221, 224, 178 P.2d 436, 438 (1947) ("The Legislature is vested with the whole of the legislative power of the state, and may deal with any subject within the scope of civil government unless it is restrained by the provisions of the Constitution ...." (citation omitted)). This is because "[s]tate constitutions are a limitation upon the power of sovereignty and in the absence of an expressed or inferential prohibition by the provisions of the constitution of the United States or of the state of Arizona the legislature of this state may in the exercise of the sovereign powers of the state, enact any law its discretion may dictate." *Roberts v. Spray*, 71 Ariz. 60, 69, 223 P.2d 808, 814 (1950).

¶ 32 Thus, our Supreme Court has determined that "the rule of construction which requires the finding of express authorization [for legislation] is inappropriate when applied to the Constitution of the State of

Arizona ... [because] it is not applicable to the construction of state constitutions generally." *Earhart*, 65 Ariz. at 224, 178 P.2d at 437 ("Unlike the Federal Constitution, state constitutions are not grants of power, but instead are limitations thereof."). As such, we do not look to the "(state) Constitution to determine whether the Legislature is authorized to do an act, but only to see if it is prohibited." *Id.* at 225, 178 P.2d at 438 (citation and internal quotation marks omitted).

### 2. Constitutionally implied prohibitions on the legislature's plenary power

¶ 33 Despite the broad power of the legislature, those powers can be limited by implied prohibitions in the state constitution. In *Citizens Clean Elections Commission v. Myers*, 196 Ariz. 516, 520, ¶ 14, 1 P.3d 706, 710 (2000), our supreme court stated: "[T]he legislature need not look to an express grant of authority in order to justify an enactment. But ... any exercise of legislative power is subject to the limitations imposed by the constitution. And just as no express grant of authority is required, there is no requirement that a limitation be express." *Myers* therefore determined that "[a] limitation may be implied by the text of the constitution or its structure taken as a whole." *Id.* at 521, ¶ 14, 1 P.3d at 711; *see Turley v. Bolin*, 27 Ariz.App. 345, 348, 554 P.2d 1288, 1291 (1976) ("[T]he legislative authority, acting in a representative capacity only, was in all respects intended to be subordinate to direct action by the people." (citation omitted)).

¶ 34 Thus, we must determine whether an implied prohibition exists by a consideration of the constitution itself and the effect that particular legislation has on the constitution. The IRC argues that the following factors support a finding of an implied prohibition of subjecting it to the OML: (1) the legislature was not expressly granted the authority to

would undoubtedly argue that application of laws such as the Public Records Act [A.R.S. §§ 39–121 *et seq.*] and the conflict of interest statutes [A.R.S. §§ 38–501 *et seq.*] cannot be applied to them, lest the courts intrude on the commissioners' implied constitutional authority." We give little weight to such argument because these provisions are not at issue in this

case and because it misstates the IRC's position. The IRC is not arguing that, unless the constitution provides that a statute applies to it, it is exempt from that statute. Rather, it argues that because its enabling, self-executing legislation provides for its own open meeting requirements, the intent of its drafters must have been to exempt the IRC from the OML.

enact legislation pertaining to the IRC, unlike the express grants of authority in Article 15 governing the Corporation Commission and in Article 11 governing the Education Board; (2) Article 4, Part 2, Section 1, is self-executing; (3) the purpose of the IRC is to be free from legislative influence and the attorney general; (4) the provisions in the OML conflict with provisions in Article 4, Part 2, Section 1; and (5) the OML enforcement and penalty provisions violate separation of powers. We address each argument in turn.

### a. The IRC is a unique constitutional entity

■ ¶ 35 The IRC maintains it is one of the few constitutional entities for which the constitution does not expressly grant the legislature any law-making authority. Specifically, it maintains that it joins the Commission on Appellate Court Appointments, Ariz. Const. art. 6, § 36, in this respect and contrasts itself with the Corporation Commission, *see* Ariz. Const. art. 15, § 6, and Board of Education, *see* Ariz. Const. art. 11, § 3, which are expressly subject to legislative authority.[9] We are not persuaded that the IRC's uniqueness favors a determination that it is not subject to the OML.

¶ 36 As discussed above, the lack of an express grant of legislative authority is not dispositive. Thus, the fact that the constitution gives the legislature express authority to enact laws governing the Board of Education and the Corporation Commission does not resolve the question here, particularly considering the Corporation Commission and

Board of Education were established at statehood and covered complex and expansive subjects requiring additional legislation. *See State ex rel. La Prade v. Cox*, 43 Ariz. 174, 177–78, 30 P.2d 825, 826–27 (1934) ("[C]onstitutions are for the purpose of laying down broad general principles, and not the expression of minute details of law."); *Kerby v. Luhrs*, 44 Ariz. 208, 214, 36 P.2d 549, 551 (1934) (explaining that written instruments "are to be construed in the light of their purpose, and this is particularly applicable to Constitutions, which are by necessity general in their nature, and presumably intended to remain in force for a long period of time"). The contrast between entities is minimally informative for our analysis as the duties of the IRC are not as expansive as these other entities, and Article 4, Part 2, Section 1, provides significant detail on the qualifications and appointments of IRC commissioners as well as a process by which the IRC must carry out its redistricting duties.

¶ 37 Nor are we persuaded by a comparison with a more recently created constitutional entity, the Commission on Appellate Court Appointments. Unlike the IRC, the Commission on Appellate Court Appointments is embodied in Article 6, which governs the judiciary, so it is not comparable to the IRC in its ability to be governed by legislative controls. *See* Ariz. Const. art. 6, § 36. More importantly, its history and distinguishable textual provisions support why a former attorney general concluded, and the legislature ultimately provided, it was not subject to the OML.[10]

---

9. Ariz. Const. art. 11, § 3 ("The powers, duties, compensation and expenses, and the terms of office, of the board [of education] shall be such as may be prescribed by law."); Ariz. Const. art. 15, § 6 ("The law-making power may enlarge the powers and extend the duties of the corporation commission, and may prescribe rules and regulations to govern proceedings instituted by and before it. . . .").

10. When Article 6, Section 36 was first enacted and until the 1992 general election, subsection E provided that the commission shall hold hearings "either public or executive, as it deems advisable." It also required that "[v]oting shall be by secret, written ballot." Arizona Secretary of State, Publicity Pamphlet at 53 (1992) (hereinafter "Publicity Pamphlet"). For these reasons, a

former Arizona Attorney General opined that because there was an express authorization for executive session and mandated secret ballots, the commissions created by Article 6, Section 36 were not subject to the OML. Op. Ariz. Att'y Gen. 179–229, 1979 WL 23296 (Sept. 5, 1979). In 1982, the legislature amended A.R.S. § 38–431.08 to reflect its current language that "[t]he commissions on appellate and trial court appointments" were exempt from the OML. In 1992, Article 6, Section 36 was amended in relevant part to require that: (1) commission meetings be public, (2) voting shall be in a public hearing, (3) the entity may meet in executive session as "prescribed by rule," and (4) the supreme court must adopt rules of procedure for the commission. Publicity Pamphlet at 53–54.

#### b. Self-executing provisions

¶38 The IRC argues that the fact that Article 4, Part 2, Section 1 is self-executing reflects the voters' intent "to prevent the legislature from hampering or shackling the [IRC's] work." However, "the fact that a constitutional provision is self-executing does not forever bar legislation on the subject. If such legislation does not unreasonably hinder or restrict the constitutional provision and if the legislation reasonably supplements the constitutional purpose, then the legislation may stand." *Direct Sellers Ass'n v. McBrayer*, 109 Ariz. 3, 5, 503 P.2d 951, 953 (1972); *see also Roberts*, 71 Ariz. at 69, 223 P.2d at 814 ("The fact that a constitutional provision is self-executing does not necessarily exhaust legislative power on the subject but such legislation must be in harmony with the spirit of the constitution."); *Gherna v. State*, 16 Ariz. 344, 352, 146 P. 494, 498 (1915) ("In cases where a provision is self-executing, legislation may still be desirable, by way of providing a more specific and convenient remedy and facilitating the carrying into effect or execution of the rights secured, making every step definite, and safe-guarding the same, so as to prevent abuses. Such legislation, however, must be in harmony with the spirit of the Constitution, and its object to further the exercise of constitutional right and make it more available, and such laws must not curtail the rights reserved, or exceed the limitations specified.").

¶39 Thus, we examine whether the OML is in conflict with the letter or the spirit of Article 4, Part 2, Section 1.

#### c. The IRC was purposely created to be free from legislative influence and the reach of the attorney general

¶40 The IRC argues that the IRC was created to be free from the partisan legislature and, therefore, subjecting the IRC to the OML would violate that independence. We disagree that the intent of the voters who created the IRC would be thwart-ed by applying various provisions of the OML to the IRC.

¶41 Our Supreme Court has made clear that "[t]he constitutional provisions creating and governing the IRC ... were designed to *remove* redistricting from the political process...." *Brewer*, 229 Ariz. at 353, ¶24, 275 P.3d at 1273. However, it does not necessarily follow that the IRC may not be subject to the OML. This is especially true, where, as here, the OML does not purport to inhibit or interfere with the redistricting process, which is the core function of the IRC and purpose for its independence from the legislature. *See Ariz. Minority Coal. for Fair Redistricting v. Ariz. Indep. Redistricting Comm'n*, 220 Ariz. 587, 592, ¶5, 208 P.3d 676, 681 (2009) ("The sole task of the [IRC] is to establish congressional and legislative districts." (citing Ariz. Const. art. 4, pt. 2, § 1(14))). Indeed, the IRC itself recognizes that "[t]he purpose for which the Commission exists is to draw and defend Arizona's redistricting plan." It is hard to see, as a matter of law, how compliance with the OML's meeting and notice requirements restricts or unduly burdens either the independence of the IRC or the performance of its mandate, especially given that the constitution also requires the IRC to hold open meetings.

¶42 We understand the IRC to more specifically argue that the legislative or executive branches will abuse their powers under the OML to interfere with the IRC's work. The IRC points to the CIDs in this case and the Governor's recent unsuccessful attempt to remove an IRC commissioner last year. *See Brewer*, 229 Ariz. at 358, ¶48, 275 P.3d at 1278. We need not decide whether an abuse of power occurred here. As discussed at Section V *infra*, the superior court determined there was no reasonable cause for the OML investigation based upon the actions detailed in the State's petition for enforcement. Moreover, the State has waived any argument that it has a reasonable basis for the investigation by failing to present and/or abandoning the argument in the superior court, as well as by failing to assert the issue on appeal.[11] That the OML provides a mech-

---

11. The State has never asserted that the public meeting at which the mapping consultant was

selected violated the OML (e.g. improper notice, agenda, vote) but rather only asserted that a

anism to challenge alleged abuses of executive power and vests power in the judiciary to make such determinations is clearly illustrated in this case. *See infra* Section V. This is not to say, however, that future amendments to the OML could not violate Article 4, Part 2, Section 1 of the Arizona Constitution, but only that, as it exists in its current form the meeting and notice provisions of the OML do not necessitate a conclusion that the OML threatens the independence of the IRC or its constitutional mandate.

¶ 43 The IRC also argues that the political branches have an "unusually limited" role in the IRC's work and the only mention of the attorney general is one which specifically divests responsibilities the office otherwise holds. In addition, the IRC maintains that "[b]y enacting a specific, exclusive mandate of openness and by providing for enforcement of that mandate through a narrowly tailored removal provision, the voters specifically chose to keep the vast power of the partisan, incumbent [a]ttorney [g]eneral far away from the [IRC]."

¶ 44 We disagree with the IRC that its enabling clauses meant that a "partisan" attorney general was to have no power to enforce the OML and that it was free from all legislative controls. First, the investigatory powers granted to the attorney general under A.R.S. § 38–431.06 did not exist when the proponents of Proposition 106 applied for a signature petition with the Secretary of State. Thus, the timeline of events belies an implied determination that the voters intended to keep the IRC far away from attorney general enforcement of the OML.

¶ 45 Second, that the IRC is granted discretionary authority to utilize the services of the attorney general in at least one type of legal action does not smack of a divestment of responsibility. Indeed, were the IRC to select the attorney general to represent it in the defense of a redistricting plan, it would be the attorney general's responsibility to represent the IRC. We fail to see how this relationship with the attorney general somehow compromises the IRC's independence.

¶ 46 Third, the constitutional provision authorizing the Governor with concurrence of the legislature to remove an IRC commissioner does not suggest total insulation from the other branches of government, but rather limited control over IRC commissioners if there is substantial neglect of duty or gross misconduct in office. But for the express removal provision, the Governor would not possess the power to remove an IRC commissioner. In addition, as the IRC acknowledges, the Governor's removal authority is not targeted towards or limited to the Open Meeting Clause. The Governor's removal authority appears in a subsection of the constitution that precedes the Open Meeting Clause and contains language indicating that it is generally applicable. Ariz. Const. art. 4, pt. 2, § 1(10) (permitting Governor to remove an IRC commissioner for "substantial neglect of duty, gross misconduct in office, or inability to discharge the duties of office" provided two-thirds of the senate concurs in the removal).

¶ 47 While it is unquestionably true that the IRC was created to ensure redistricting is independent from partisan politics in the legislative and the executive branches, a determination that wholesale exclusion from the OML must be implied by the constitution does not necessarily follow or further the purpose of the independence contemplated by the express provisions of the constitution. Only if the OML, as a whole, so conflicts with the constitutional provisions of the IRC as to constitute an interference with or frustration of the IRC should the OML as a whole not apply. *See Atkinson, Kier Bros., Spicer Co. v. Indus. Comm'n,* 35 Ariz. 48, 53, 274 P. 634, 635, (1929) (power clearly legislative in character ought not be denied by implication unless it interferes with, frustrates, or defeats a power expressly granted).

¶ 48 Similarly, if particular provisions of the OML conflict with or frustrate the constitutional provisions dealing with the IRC, we can hold that only those sections of the OML do not apply to the IRC, provided we can do so without doing violence to the statutory

violation of the OML occurred by failing to hold public meetings prior to the vote. Thus, the issue of nullifying the decision to select the map-

ping consultant under the OML is not before this Court, nor was it before the superior court.

scheme. *See State v. Jones,* 142 Ariz. 302, 306, 689 P.2d 561, 565 (App.1984) ("If part of an act is unconstitutional, but by eliminating the unconstitutional portion the balance of the act is workable, only that part which is objectionable will be eliminated and the balance will be left intact."); *Gherna,* 16 Ariz. at 350, 146 P. at 501 ("It is well settled that, if a statute is in part unconstitutional, the whole statute must be deemed invalid, if the parts not held to be invalid are so connected with the general scope of the statute that they cannot be separately enforced, or, if so enforced, will not effectuate the manifest intent of the Legislature." (citation and internal quotation marks omitted)). Thus, we now turn to whether particular explicit provisions of the OML which the IRC claims are in conflict with the Open Meeting Clause create an implied prohibition from applying the OML to the IRC.

### d. Competing provisions of the constitution and the OML

#### i. Public meetings

■ ¶ 49 The IRC argues that the Open Meeting Clause is narrower than the OML

with respect to the nature of a public meeting for two reasons. First, the IRC contends the constitution provides that a public meeting is required only when a quorum is "present" and "[t]he question whether three people could be 'present' in a series of bilateral telephone calls is plainly different than deciding whether the same calls were a [meeting which is defined as a] 'gathering, in person or through technological devices' under the OML." Second, the IRC claims that while the Open Meeting Clause refers to a quorum "conducting business," a meeting under the OML is much broader because "[i]n addition to 'tak[ing] legal action,' a 'meeting' under the OML means 'the gathering, in person or through technological devices, of a quorum ... at which they discuss, propose or take legal action, including any deliberations.'" The IRC suggests that because the requirements in the constitution are narrower than the OML, if it complies with the constitution it will violate the OML. We disagree.

¶ 50 A comparison of the Open Meeting Clause and the OML as to the nature of a public meeting does reflect differences as illustrated below.

| | OML<br>A.R.S. § 38–431 | Ariz. Const. art. 4, pt. 2, § 1(12)<br>art. 4, pt. 2, § 1(12) |
|---|---|---|
| Meeting | ■ gathering of quorum: in person or through technological devices<br>■ discuss, propose, deliberate, or take legal action | ■ "quorum present"<br><br>■ "conduct business" |
| Legal action | ■ collective decision, commitment or promise<br>■ made by public body pursuant to: constitution, public body's charter, bylaws or specified scope of appointment and the laws of this state | |
| Quorum | | ■ 3 commissioners, including chair or vice-chair |

¶ 51 Thus, the constitution requires that "[w]here a quorum is present, the [IRC] shall conduct business in meetings open to the

public...." Ariz. Const. art. 4, pt. 2, § 1(12). Under the OML "[a]ll meetings of any public body shall be public meetings...." A.R.S. § 38–431.01(A).[12] The OML specifically de-

12. In relevant part, "'[p]ublic body' means the legislature, all boards and commissions of this state...." A.R.S. § 38–431(6). In 2012, the legislature amended the statute to provide that,

"[p]ublic body includes all commissions and other public entities established by the Arizona Constitution ... and this article applies except and only to the extent that specific constitutional

fines a "meeting" as a "gathering, in person or through technological devices, of a quorum ... at which they discuss, propose or take legal action, including any deliberations by a quorum with respect to such action." A.R.S. § 38–431(4).

¶ 52 We do not interpret being "present" as required by the constitution to be narrower than a "gathering" under the OML. Under both the Constitution and the OML a public meeting is required where there is a quorum of members.[13] *Brewer*, 229 Ariz. at 357, ¶ 44, 275 P.3d at 1277.[14]

¶ 53 We also disagree with the IRC that a meeting under the OML includes more than conducting business under the Open Meeting Clause. A meeting under the OML includes discussing, proposing, deliberating, and taking legal action.[15] We interpret "conduct business" under the Open Meeting Clause just as broadly and as more encompassing than legal action. "Conduct business" is not defined by the constitution. Where terms are not defined, we give them their ordinary meanings. *Circle K Stores*, 199 Ariz. at 406, ¶ 11, 18 P.3d at 717 ("We interpret undefined words in a constitutional provision according to their natural, obvious, and ordinary meaning as understood and used by the people.").

¶ 54 Conduct means "[t]o direct the course of," or "[t]o guide or lead," or "[t]he act of directing or controlling." Webster's II New Riverside University Dictionary 295–96 (1994). It also has been defined as "the act, manner, or process of carrying on." Merriam–Webster online dictionary, http://www.merriam-webster.com/dictionary/conduct

(last visited Dec. 6, 2012). Business means "[c]ommercial, industrial, or professional dealings." Webster's II New Riverside University Dictionary 212 (1994). It has also been defined as "an immediate task or objective." Merriam–Webster online dictionary, http://www.merriam-webster.com/dictionary/business (last visited Dec. 6, 2012).

¶ 55 Thus, "legal action" pursuant to the OML is subsumed within the definition of "conduct business" pursuant to the constitution. Any time the IRC meets to conduct business in compliance with the Open Meeting Clause, it will necessarily comply with OML's requirement of gathering to discuss, propose, deliberate, or take legal action.

#### ii. Notice provisions

¶ 56 The constitution requires that meetings open to the public require "48 or more hours public notice." Ariz. Const. art. 4, pt. 2, § 1(12). In contrast, the OML requires 24 hours public notice. A.R.S. § 38–431.02(C). Because the constitution's explicit requirement is more restrictive than the OML, by complying with the constitution's notice requirement, the IRC will necessarily be in compliance with the OML. The legislature cannot diminish the length of time notice must be given to the public that is explicitly provided in the constitution. *See State v. Roscoe*, 185 Ariz. 68, 72, 912 P.2d 1297, 1301 (1996) (determining legislature improperly reduced the scope of victims' rights provided in the constitution by denying victim status to a category of people that were not denied status by the constitution). In

provisions supersede this article." The legislative notes pertaining to the 2012 amendment indicate that the legislature amended the statute "to clarify that the [IRC] ... was and is subject to the open meeting statutes ... except for those limited instances in which the more specific provision in the Arizona Constitution applies." We rely on the version of the statute prior to the 2012 amendment because the amendment to the statute is not material to our decision. Moreover, if we determined that the constitution impliedly prohibited the OML from applying to the IRC, the amendment would be unconstitutional.

13. That the constitution defines quorum and the OML does not suggests only that the constitution controls the definition of a quorum as it relates to IRC meetings.

14. We do not reach the issue of whether serial phones calls between IRC commissioners constitutes a quorum because that is not at issue in this appeal. As discussed at ¶ 8 *supra* and Section v. *infra*, the State specifically withdrew its allegations that serial phone calls violated the OML and it did not appeal the superior court's determination that there was no reasonable cause to conduct an investigation under the OML.

15. "Legal action" is defined as "a collective decision, commitment or promise made by a public body pursuant to the constitution, the public body's charter, bylaws or specified scope of appointment and the laws of this state." A.R.S. § 38–431(3).

this case, severing the 24–hour notice provision from the rest of the OML does not damage the OML's statutory scheme because more notice is required by the Open Meeting Clause.

¶ 57 The constitution does not explicitly state what type of notice is required and where it must be posted. By complying with the OML on this aspect, the IRC cannot violate the constitution. Similarly, the Open Meeting Clause does not expressly address the IRC's ability to meet in executive session.[16] Thus, the IRC will not violate the constitution by complying with the OML's requirements with respect to executive sessions.[17]

### iii. Enforcement and penalty provisions for violations

¶ 58 The IRC argues that by expressly including the Open Meeting Clause and a removal provision by the Governor in the constitution, the voters intended that the only penalty for violations of the Open Meeting Clause is removal by the Governor. It argues that the standard for removal by the Governor is stringent, and that the constitution does not make a violation of the Open Meeting Clause itself cause for removal. In contrast, under the OML, in addition to a writ of mandamus to require a meeting be open to the public (A.R.S. § 38–431.04),[18] a

violation of the OML carries the following potential enforcement and penalty options: mandatory nullification of business transacted in violation of the OML (A.R.S. § 38–431.05(A)); civil penalties up to five hundred dollars (A.R.S. § 38–431.07(A)); equitable relief (A.R.S. § 38–431.07(A)); attorneys' fees (A.R.S. § 38–431.07(A)); removal of a commissioner by a court if the court finds the commissioner intended to deprive the public of information including court costs and attorneys' fees (A.R.S. § 38–431.07(A)).

¶ 59 Thus, we must determine whether the application of these differing penalties interferes with, frustrates, or diminishes the constitution as opposed to reasonably supplementing the constitution. See Atkinson, 35 Ariz. at 52, 274 P. at 635 (stating power clearly legislative in character ought not be denied by implication unless it interferes with, frustrates, or defeats a power expressly granted); State v. Allred, 67 Ariz. 320, 329, 195 P.2d 163, 170 (1948) (stating legislature cannot take away the right of a tax exemption, but it may, establish a reasonable procedure for voluntary assertion or waiver of the right; the nature of the constitutional provision makes additional legislation permissible and desirable); Gherna, 16 Ariz. at 352, 146 P. at 498 ("[L]egislation may still be desirable, by way of providing a more specific and

---

16. The State also argues that the IRC has implicitly acknowledged that it must comply with the OML because it has utilized executive session and other aspects of the OML in fulfilling its mandate. We do not find this argument persuasive. To the extent the IRC has complied with the OML because it relied on the OML for guidance or the Attorney General's advice, we are not persuaded such actions constitute an admission that the IRC believed it was bound by the OML. More importantly, although we give deference to an agency's interpretation of a statute or regulation it is charged with enforcing, it is ultimately the responsibility of the judiciary to interpret the meaning and applicability of statutory and constitutional provisions. U.S. Parking Sys. v. City of Phoenix, 160 Ariz. 210, 211, 772 P.2d 33, 34 (App.1989); Dearing v. Ariz. Dep't of Econ. Sec., 121 Ariz. 203, 206–07, 589 P.2d 446, 449–50 (App.1978).

17. Unlike the constitutional provisions governing the Commission on Appellate Court Appointments, there is no express provision governing the IRC's ability to meet in executive session or

any provisions for the development of rules of procedure that govern executive sessions. See supra Footnote 10. Even if we were to infer that the IRC had authority to meet in executive session for the purpose of meeting with the IRC's attorney because the attorney-client privilege is recognized at common law, Upjohn Co. v. United States, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981), and by statute, A.R.S. §§ 12–2234 (2003), 13–4062 (2010), the IRC would not have a statutory or constitutional basis to meet in executive session for other valid reasons as enumerated by the OML. See A.R.S. § 38–431.03. There is nothing expressly in Article 4, Part 2, Section 1 or implied in the constitution to suggest that the voters intended to deny the IRC the ability to appropriately utilize executive sessions.

18. Because any citizen with standing can file a mandamus action under the Rules of Procedure for Special Actions, the statutory mandamus enforcement option, A.R.S. § 38–431.04, does not subject the IRC to anything different than a special action. See Ariz. R.P. Spec. Act. 1; id. at com. notes.

convenient remedy and facilitating the carrying into effect or execution of the rights secured.... Such legislation, however, must be in harmony with the spirit of the Constitution, and its object to further the exercise of constitutional right and make it more available, and such laws must not curtail the rights reserved, or exceed the limitations specified.").[19]

¶ 60 Adding potential penalties for failing to hold public meetings does not directly affect the core purpose and function of the IRC to create a redistricting plan. The legislation does not purport to govern the process or requirements for creating the plan, nor does it alter the approval process. Nor does the legislation affect the process of selecting IRC commissioners such that the goal of creating an independent commission is subverted. The penalty provisions relate only to tangential aspects of the IRC's functioning as to how it fulfills its responsibilities to make the redistricting process open to the public.

¶ 61 Nor do we see how equitable relief for a violation of the OML *per se* conflicts with Article 4, Part 2, Section 1. Some types of equitable relief are already available through a common law special action, including writs of mandamus and prohibition.

¶ 62 Equitable relief sought through a special action might also include a request to declare a decision by the IRC made in violation of the OML as null and void. Unlike the Open Meeting Clause, the OML includes a mandatory provision that voids actions taken in violation of the OML unless the action is ratified. *See* A.R.S. § 38–431.05(A). Assuming without deciding that this mandatory statutory provision violates Article 4, Part 2, Section 1, such relief under the OML may be severed from the rest of the OML without subverting the legislature's intent in enacting the OML. Similarly, even assuming a $500 civil penalty or an award of attorneys' fees violates the constitution, it does not follow that the other provisions of the OML cannot apply.

¶ 63 A more serious concern regarding the applicability of the OML involves a court's ability to remove a commissioner if a violation was committed with the intent to deprive the public of knowledge, *see* A.R.S. § 38–431.07(A), because the sole constitutional provision for removal of an IRC commissioner vests such power with the Governor with concurrence by two-thirds of the Senate. Ariz. Const. art. 4, pt. 2, § 1(10). Again, even assuming this provision was unconstitutional, we do not think that it is so integral to the OML that the penalty cannot be severed without leaving the rest of the OML intact. Although we do not decide whether this provision or the other penalty provisions violate the constitution because these issues are not squarely before us, we nevertheless acknowledge the provisions because they are a part of our larger analysis in determining whether the OML is impliedly prohibited from being applied to the IRC. Even assuming certain penalty provisions unconstitutionally interfere with the IRC's redistricting duties, or potentially jeopardize the IRC's indepen-

19. *Compare Direct Sellers,* 109 Ariz. at 5, 503 P.2d at 953 (upholding legislation requiring that circulators of referendum petitions be qualified electors, notwithstanding absence of any constitutional requirement to that effect), *Roberts,* 71 Ariz. at 69, 223 P.2d at 814 (determining that legislation adding requirement that a resident real property owner must also be a taxpayer to vote in hospital district did not impermissibly add to constitutional requirement that voter must be a property owner), *Atkinson,* 35 Ariz. at 53–54, 274 P. at 635–36 (determining legislation providing workers' compensation coverage for non-manual and non-mechanical professions did not interfere with constitutionally required coverage for manual and mechanical professions), *and Lou Grubb Chevrolet v. Indus. Comm'n,* 171 Ariz. 183, 190, 829 P.2d 1229, 1236 (App.1991) (determining that because legislation providing coverage of additional risks beyond those specified in constitution would not diminish constitutionally mandated coverage, legislation was appropriate), *with Roscoe,* 185 Ariz. at 72–73, 912 P.2d at 1301–02 (determining statute restricting constitutional definition of victim improperly eliminated or narrowed rights given by constitution), *Whitney v. Bolin,* 85 Ariz. 44, 47, 330 P.2d 1003, 1005 (1958) (determining statute that penalized an incumbent elected official for seeking nomination to another office by declaring the incumbent's office vacant altered Article 6 qualifications for supreme court judges by superimposing new and distinct qualifications as applied to an incumbent superior court judge seeking supreme court office), *and Turley,* 27 Ariz.App. at 349, 554 P.2d at 1292 (determining provision in statute improperly shortened filing period for initiative petitions granted in constitution).

dence, the provisions are not critical to the OML and, if necessary, they can be severed from the rest of the statute without doing harm to the overall statutory scheme. Thus, the existence of these differing penalty provisions do not require a conclusion, for our purposes here, that the OML does not apply to the IRC. *See Jones,* 142 Ariz. at 306, 689 P.2d at 565 ("If part of an act is unconstitutional, but by eliminating the unconstitutional portion the balance of the act is workable, only that part which is objectionable will be eliminated and the balance will be left intact."); *Gherna,* 16 Ariz. at 350, 146 P. at 501 ("It is well settled that, if a statute is in part unconstitutional, the whole statute must be deemed invalid, if the parts not held to be invalid are so connected with the general scope of the statute that they cannot be separately enforced, or, if so enforced, will not effectuate the manifest intent of the Legislature." (citation and internal quotation marks omitted)).

### iv. Separation of powers

¶ 64 The IRC argues that, even assuming some of the OML provisions apply, the investigative powers and penalty provisions in the OML would violate separation of powers if they were applied to the IRC. The IRC also argues that the OML violates separation of powers because it creates new duties for the IRC. We disagree.

¶ 65 Article 3, of the Arizona Constitution provides:

> The powers of the government of the state of Arizona shall be divided into three separate departments, the legislative, the executive, and the judicial; and, except as provided in this constitution, such departments shall be separate and distinct, and no one of such departments shall exercise the powers properly belonging to either of the others.

¶ 66 A violation of the separation of powers doctrine occurs when one branch of government usurps another branch's powers or prevents that other branch from exercising its authority. *E.g., J.W. Hancock Enters. v. Ariz. Registrar of Contractors,* 142 Ariz. 400, 404–05, 690 P.2d 119, 123–24 (App.1984); *see also State ex rel. Woods v. Block,* 189 Ariz. 269, 276, 942 P.2d 428, 435 (1997). We do not see how the OML *per se* violates the doctrine here.

¶ 67 First, as to the enforcement and investigatory powers, the IRC does not assert that another branch of government is exercising its legislative powers or preventing it from exercising its legislative powers, but merely that the executive branch's use of its investigatory power under the OML would "chill[ ] the independence of the commissioners." The IRC asserts that the IRC's "constitutional integrity is threatened when, without neutral oversight [the attorney general can] ... issue compulsory investigative demands."

¶ 68 We are not persuaded by this argument because there is neutral oversight by the judiciary reviewing the propriety of CIDs and refusing to enforce CIDs or enjoining an investigation under A.R.S. § 38–431.06. Indeed, the IRC successfully utilized the neutral oversight provisions of the OML in this case.[20]

¶ 69 The IRC makes a conclusory assertion that "after-the-fact protection is insufficient to vindicate the rights of the [IRC] and its members," because "[t]he mere fact of the investigation risks delegitimizing the [IRC's] redistricting work." This is essentially an argument that an investigation may make the

---

**20.** A.R.S. § 38–431.06(D) states in relevant part:
If a person objects to or otherwise fails to comply with the written investigation demand served on the person ... the attorney general or county attorney may file an action in the superior court for an order to enforce the demand. ... If a court finds that the demand is proper, including that the compliance will not violate a privilege and that there is not a conflict of interest on the part of the attorney general or county attorney, *that there is reasonable cause to believe there may have been a violation of this article and that the information sought or document or object demanded is relevant* to the violation, the court shall order the person to comply with the demand, subject to modifications the court may prescribe.
(Emphasis added.)
As discussed at Section V *infra,* we reject the State's argument that the attorney general or county attorneys may issue new CIDs pursuant to A.R.S. § 38–431.06(B) regarding the same actions alleged in the petition for enforcement in this matter.

IRC look bad in the eyes of the public, but the IRC does not state what, if any, effect bad publicity has upon the IRC in carrying out its constitutional mandate. The IRC's mandate and authority to create and implement a redistricting plan is constitutionally granted and prescribed, and an investigation under the OML cannot diminish the rights granted under the constitution.

¶ 70 Second, the IRC argues that, just as the legislature was not free to impose additional duties on the Commission on Appellate Court Appointments, as determined by *Myers*, 196 Ariz. at 522, ¶ 22, 1 P.3d at 712, it also "lacks authority to impose additional or conflicting open-meeting requirements beyond what is already specifically provided in Article IV's Open Meetings Clause."

¶ 71 We do not agree that requiring compliance with the OML unconstitutionally adds duties to the IRC for purposes of a separation of powers analysis. We find *Myers* distinguishable because the problematic provision in the constitutional amendment in that case frustrated the separation of powers between the branches of government and thus violated the constitution. In addition, contrary to the IRC's assertion, imposing additional duties fundamentally altering a constitutional mandate is different than imposing rules by which to fulfill existing constitutional duties. As Article 4, Part 2, Section 1 makes clear, in furtherance of fulfilling its mandate of redistricting, the IRC has the tangential responsibility to conduct its business in public meetings. The OML requirements do not impose upon the IRC's core redistricting duties, but rather merely provide rules by which its tangential responsibility to conduct business in public can be fulfilled and enforced. *See Allred*, 67 Ariz. at 329–30, 195 P.2d at 170 (determining legislation did not take away constitutional right of tax exemption but merely established a reasonable procedure for voluntary assertion or waiver of the exemption right; nature of the constitutional provision makes additional legislation permissible and desirable). Moreover, even if the OML in some way affects the IRC's core redistricting function that is not argued here, it does not necessarily follow that the

legislation would be invalid so long as the legislation did not frustrate or interfere with the constitution. *See supra* ¶ 59 and Footnote 19.

¶ 72 Thus, we conclude that requiring the IRC to comply with the OML does not violate separation of powers.

### IV. *Legislative privilege and immunity*

¶ 73 The superior court determined that, even assuming the OML applies, the IRC is protected from the CIDs here, by legislative privilege. We disagree.

¶ 74 Legislative immunity bars criminal and civil liability for legislative acts, and includes a testimonial and an evidentiary privilege. *Ariz. Indep. Redistricting Comm'n v. Fields*, 206 Ariz. 130, 137, ¶ 17, 75 P.3d 1088, 1095 (App.2003) (stating the privilege is intended "to support the rights of the people, by enabling their representatives to execute the functions of their office without fear of prosecutions, civil or criminal" (citation and internal quotation marks omitted)). The privilege protects against disclosure of testimony, and "in appropriate circumstances," even documents created outside court proceedings. *Id.* at 140–41, ¶ 32, 75 P.3d at 1098–99 ("[T]o the extent the legislative privilege protects against inquiry about a legislative act or communications about that act, the privilege also shields from disclosure documentation reflecting those acts or communications.").

¶ 75 This Court has previously determined that IRC commissioners have legislative privilege when formulating a redistricting plan, *id.* at 139–40, ¶¶ 23, 30, 75 P.3d at 1097–98, but we acknowledged that the "legislative privilege does not extend to cloak 'all things in any way related to the legislative process,'" *id.* at 137, ¶ 18, 75 P.3d at 1095. *Fields* concluded that the IRC commissioners "are cloaked with legislative privilege for actions that are an integral part of the deliberative and communicative processes utilized in developing and finalizing a redistricting plan, and when necessary to prevent indirect impairment of such deliberations." *Id.* at 139, ¶ 24, 75 P.3d at 1097 (citation and internal quotation marks omitted); *see also*

*id.* at 140, ¶ 30, 75 P.3d at 1098 (determining that a legislator can invoke the legislator's privilege "to shield from inquiry the acts of independent contractors retained by that legislator that would be privileged legislative conduct if personally performed by the legislator").

¶ 76 To come to this conclusion we had to determine whether the IRC's redistricting acts were legislative in nature because "the privilege does not apply to the performance of 'administrative' tasks." *Id.* at 137, ¶ 18, 75 P.3d at 1095; *see Ariz. Minority Coal. for Fair Redistricting,* 220 Ariz. at 595, 596–97, ¶¶ 19, 28, 208 P.3d at 684, 685–86 (acknowledging in case challenging final map that the "process of redistricting is itself traditionally viewed as a legislative task" and explaining that IRC commissioners do not merely implement established redistricting policy but are guided by the constitution through a specific process found in Article 4, Part 2, Sections 1(14) to 1(16) to decide where to draw district boundaries and that IRC adopts a final map "only after engaging in several levels of discretionary decision-making").

¶ 77 We explained in *Fields* that:

[w]hether an act is "legislative" depends on the nature of the act. An act is legislative in nature when it bears the hallmarks of traditional legislation by reflecting a discretionary, policymaking decision that may have prospective implications, as distinguished from an application of existing policies.... Further, a legislative act occurs in a field where legislators traditionally have power to act.

206 Ariz. at 138, ¶ 21, 75 P.3d at 1096 (citation and internal quotation marks omitted).

¶ 78 The IRC argues that the selection of a mapping consultant is a legislative function that is integral to the IRC's constitutional mandate without which it would not be able to perform its duties. It therefore argues that "the [Attorney General's investigative] inquiry is not into an administrative decision akin to the hiring or firing of a single em-

ployee, but a policy determination having prospective consequences." It maintains that the enforcement provisions under the OML "are unconstitutional to the extent they empower the [a]ttorney [g]eneral or [c]ounty [a]ttorney to compel testimony . . . as related to a discretionary matter." [21]

¶ 79 The constitution gives the IRC "contracting authority" and discretion to "hire staff and consultants for purposes of this section." Ariz. Const. art. 4, pt. 2, § 1(19). The decision whether to hire a mapping consultant and whom to hire are discretionary decisions. However, while such decisions are related to the legislative process and may facilitate the creation of districts, they do not in themselves bear the "hallmarks of traditional legislation by reflecting a discretionary, *policymaking* decision." *See Fields,* 206 Ariz. at 138, ¶ 21, 75 P.3d at 1096 (emphasis added).

¶ 80 The act of hiring a mapping consultant is unlike the acts in *Fields* or *Minority Coalition,* which involved Article 4, Part 2, Sections 1(14) to 1(16) and the actual creation of districts and discretionary determinations of where to draw districts based upon the guidance afforded by the constitution. Rather the decision to hire a particular consultant to draw a map to "commence[ ] . . . the mapping process . . . [by] creat[ing] . . . districts of equal population in a grid-like pattern across the state," Ariz. Const. art. 4, pt. 2, § 1(14), precedes the IRC's discretionary policy-making decisions as related to its legislative function of redistricting. Moreover, the discretionary decision to hire a mapping consultant cannot be said to have the "force of law" with "prospective application." *See Fields,* 206 Ariz. at 138, ¶ 23, 75 P.3d at 1096. Thus, we determine that the IRC's deliberations about whether to hire a particular mapping consultant are not cloaked by legislative privilege. This is not to say, however, that the documents requested by the CIDs here would not be protected by legislative privilege or do not contain protected material, but only that as they pertain to hiring the map-

---

**21.** To the extent the IRC is arguing that the statute must be unconstitutional because it gives the attorney general and county attorneys unbri-

dled power to force a person to submit to interrogation and produce documents, we reject that argument. *See supra* ¶¶ 42, 68; *infra* Section V.

ping consultant, they are not protected by legislative privilege and immunity.

### V. Reasonable cause to investigate under A.R.S. § 38–431.06

¶ 81 The superior court determined that, even assuming the OML applies, there was no reasonable cause for the CIDs. *See* A.R.S. § 38–431.06(D) ("If a court finds that the demand is proper, including ... there is reasonable cause to believe there may have been a violation of this article...."). Thus, the court enjoined any further investigation pursuant to A.R.S. § 38–431.06 of the acts alleged to be in violation of the OML as stated in the petition for enforcement. We affirm that decision for several reasons.

¶ 82 First, the State did not assert this issue or argue that this was error in its opening brief. In its reply brief, the State only argues that it can use other methods of investigation under A.R.S. § 38–431.06(B), and without authority, argues the superior court cannot enjoin further investigation.[22] Any error asserted or argument maintained for the first time in the State's reply brief is deemed abandoned, waived, or conceded. *See* ARCAP 13(a)(5), (6) ("[A]ppellant shall concisely and clearly set forth ... [a] statement of the issues presented for review ... [and][a]n argument which shall contain the contentions of the appellant with respect to the issues presented."); *Robert Schalkenbach Found.*, 208 Ariz. at 180, ¶ 17, 91 P.3d at 1023 (noting appellants did not challenge a holding in their opening brief and stating "[g]enerally, we will consider an issue not raised in an appellant's opening brief as abandoned or conceded" (citations omitted)); *see also Grant v. Ariz. Pub. Serv. Co.*, 133 Ariz. 434, 444, 652 P.2d 507, 517 (1982) ("The argument simply comes too late when made for the first time in appellant's reply brief.").

¶ 83 Second, at oral argument the State conceded that any challenge to the superior court's determination that there was no reasonable cause for the OML investigation is moot because the State did not appeal the issue.

¶ 84 Third, we expressly reject the State's argument that it can circumvent the injunction issued by the superior court by simply using other methods of investigation under A.R.S. § 38–431.06(B). The superior court clearly enjoined any and all OML investigation of the communications alleged in the petition for enforcement. The State seems to argue that, because it only utilized A.R.S. § 38–431.06(B)(1) in this matter, the county attorney is not precluded from further utilization of A.R.S. § 38–431.06(B)(2) through (5).[23] We cannot agree with the State's interpretation of the investigatory methods and procedures contemplated by A.R.S. § 38–431.06. Although the investigative methods are enumerated in A.R.S. § 38–431.06(B)(2) through (5), such methods must be utilized through the issuance of a written investigative demand (which we have generally referred to as CIDs throughout this opinion) as prescribed by A.R.S. § 38–431.06(B)(1). In other words, the investigative methods listed in subsections (B)(2) through (5) are not independent of the issuance of a CID under subsection (B)(1).

¶ 85 Our interpretation of A.R.S. § 38–431.06(B) is confirmed by the statute as a whole. Section 38–431.06(C) states:

> The written investigative demand shall: 1. Be served on the person in the manner required for service of process in this state.... 2. Describe the class or classes of documents or objects.... 3. Prescribe a reasonable time at which the person shall appear to testify.... 4. Specify a place

---

22. The State's conclusory citation to A.R.S. § 12–1802(4) (2003) in its reply brief is inapplicable. Section 12–1802(4) provides that an injunction shall not be granted "[t]o prevent enforcement of a public statute by officers of the law for the public benefit." As our supreme court has made clear, an injunction may be granted when a public official is acting unlawfully. *State ex rel. Berger v. Myers*, 108 Ariz. 248, 250, 495 P.2d 844, 846 (1972). Here, the superior court determined there was no reasonable

cause for the OML investigation, so it was within the court's authority under A.R.S. § 12–1802(4) to enjoin the investigation.

23. As discussed at Footnote 3 *supra*, the CIDs issued here sought to require testimony under oath and the inspection of documents. These investigative methods are embodied in A.R.S. § 38–431.06(B)(2) through (4).

for the taking of testimony or for production of a document or object....

It is clear that subsection (C) contemplates that a CID will issue pursuant to subsection (B)(1) and that the CID will utilize the methods described in subsections (B)(2) through (5). Similarly, subsection (D) contemplates an objection or noncompliance with a CID issued pursuant to A.R.S. § 38–431.06(B)(1) that seeks to investigate by the methods in subsections (B)(2) through (5) as evidenced by the language: "If a person objects to or otherwise fails to comply with the written investigation demand served on the person pursuant to subsection C...." Moreover, subsection (D) empowers the courts to determine whether there is "reasonable cause" for the investigation, and to determine whether the information sought or document demanded by the CID is relevant to the alleged violation. This necessarily means that the court has the power to review any of the investigative methods under A.R.S. § 38–431.06(B)(2) thorough (5), that such demands can only be made through the issuance of a CID under A.R.S. § 38–431.06(B)(1), and that those methods are not independent from the CID itself.

¶ 86 Any other reading of the statute would be illogical and the State cites no authority for its contrary interpretation. Not only does it strain the imagination to envision how a demand for testimony or documents under subsections (B)(2) through (5) would occur but for the issuance of a CID as prescribed by subsection (B)(1), but such an interpretation would cause internal inconsistencies within the statute itself as described above, and would call into question the constitutionality of A.R.S. § 38–431.06(B)(2) through (5) by giving executive officials unbridled powers to force someone to testify under oath or produce documents under oath without first issuing a CID.

¶ 87 The lack of reasonable cause for the investigation here is reason alone to affirm the grant of summary judgment in favor of the Appellees. *See Hill,* 191 Ariz. at 112, 952 P.2d at 756 (stating we will affirm the superior court if its determination "is correct for any reason").

## CONCLUSION

¶ 88 There are no issues of genuine material fact precluding summary judgment. The IRC has the capacity and standing to bring this action for declaratory and injunctive relief. As a matter of law, the OML applies to the IRC. The communications alleged in the petition for enforcement, insofar as they pertain to hiring the mapping consultant, are not protected by legislative privilege. There is, however, no reasonable cause to support the OML investigation. We affirm the superior court's entry of summary judgment in favor of the Appellees and the injunction against further investigation under the OML of the acts alleged in the petition for enforcement.

CONCURRING: MICHAEL J. BROWN, Presiding Judge and ANDREW W. GOULD, Judge.